HENRY G. HILL *et al.*

*v.*

CAROLINE BAHRNS *et al.*

*Filed at Mt. Vernon October 16, 1895.*

1. APPEALS AND ERRORS—*conclusiveness of verdict on appeal to Supreme Court.* A verdict will not be set aside by the Supreme Court, in a chancery case to set aside a will, on the ground that the jury has reached a wrong conclusion as to the facts, unless the record shows it to be against the clear preponderance of the evidence.

2. SAME—*effect of improper answer to a proper question.* An improper answer to a proper question, which was objected to, is not ground of reversal, in the absence of any subsequent request to exclude the answer.

3. SAME—*rejecting question in fact answered, not error.* If a question was substantially answered notwithstanding an objection, error in rejecting the question is immaterial.

4. SAME—*rejected evidence must be shown by the record.* The rejection of evidence offered to prove the contents of receipts is not shown to be error, where the record does not disclose such contents.

5. SAME—*party cannot complain of same error he commits.* Error in giving instructions on an issue outside of the evidence cannot be asserted by a party who asked and obtained like instructions.

6. EVIDENCE—*declarations of testator—when not admissible.* Declarations of a testator that he had treated all his children alike, are inadmissible to show mental incapacity or undue influence in case of a later will.

7. SAME—*for what purpose declarations of testator are competent.* Declarations of a testator, made before or after the execution of his will, may be proved so far as they tend to show his mental condition at the time the will was executed.

WRIT OF ERROR to the Circuit Court of Effingham county; the Hon. E. D. YOUNGBLOOD, Judge, presiding.

HORACE S. CLARK, and WILLIAM B. WRIGHT, for plaintiffs in error.

S. F. GILMORE, E. N. RINEHART, and R. C. HARRAH, for defendants in error.

Mr. JUSTICE CARTER delivered the opinion of the court:

Defendants in error, Caroline Bahrns and others, filed their bill in equity in the circuit court of Effingham county to set aside the will of George Hill, deceased, on the grounds that the testator was of unsound mind, and that the execution of the will was obtained by undue influence. Upon two different trials the contestants obtained verdicts in their favor. The court set the first verdict aside, but allowed the verdict rendered on the last trial, that the will in question was not the last will and testament of George Hill, deceased, to stand, and entered a decree accordingly.

Plaintiffs in error have assigned for error, and insist here, that the verdict rendered is contrary to the evidence, and that the trial court erred in not granting a new trial on that ground. A large number of witnesses were examined on each side, and, as is not unusual in such cases, there was an irreconcilable conflict in their testimony. We have carefully read and considered the evidence, and have arrived at the conclusion that the trial court did not err in refusing to grant a new trial on this ground. The will in question was made on the second day of June, 1892, and the maker of it died on December 3 following, at the age of about seventy-nine years. His wife had died about one year before, and after her

death he lived with one of his married daughters until his death. Shortly after his wife's death he made a will substantially the same as the last one, but some question having been raised as to whether he was under the influence of intoxicating liquor or not when he executed it, he then made the will in controversy. These two wills were given in evidence. There was considerable evidence tending to show that his mind and memory had become so far impaired at the time of the execution of his last will as to render him incapable of making a valid will, and on the other hand many witnesses gave testimony tending to show his mental competency. It was the province of the jury to weigh the evidence, and while we cannot say, from the record, that the verdict is supported by a clear preponderance of the evidence, neither does it appear to be manifestly against the weight of the evidence. The question was one of fact, for the jury, and it is the well-established rule that this court will not set aside the verdict on the ground that the jury have reached a wrong conclusion as to the facts, unless the record shows that the verdict is against the clear preponderance of the evidence. *Sinnet* v. *Bowman,* 151 Ill. 146; *McCommon* v. *McCommon,* id. 428; *American Bible Society* v. *Price,* 115 id. 623; *Moyer* v. *Swygart,* 125 id. 262; *Calvert* v. *Carpenter,* 96 id. 63; *Bevelot* v. *Lestrade,* 153 id. 625; *Hoobler* v. *Hoobler,* 128 id. 645; *Meeker* v. *Meeker,* 75 id. 260; *Long* v. *Long,* 107 id. 210; *Greene* v. *Greene,* 145 id. 264.

It is next insisted that the trial court erred in its rulings in the admission and exclusion of evidence. One of the principal witnesses for contestants who testified to the mental incompetency of said George Hill, was his brother, Louis Hill. He testified that he was a year or two younger than his brother; that his brother moved from his farm into the city of Effingham six or seven years before his death, and established his home about a square away from where witness lived; that he, witness, then saw his brother from one to three times each week

until his brother's death; that his brother's wife died in December, 1891, and two or three months afterward his brother went to live with his son-in-law, Frank Smith, in the country; that the last time his brother visited him at his house was in September before the death of his wife, and that "he wasn't exactly what he might be. He was sitting on the lounge there, and he said, 'I have made my will, Louis.' I said to him that was all right." Counsel for complainants then asked the witness this question: "Mr. Hill, you may state what he said to you and how he acted." Counsel for defendants below objected, on the ground that it was improper to show by the testator's statements that he had made or intended to make a will different from the one in controversy; that it might be proper if offered to prove weakness of mind, but was improper for any other purpose. Counsel for complainants then stated that it was offered for the purpose of showing the condition of the testator's mind, and the alleged influence by which he was induced to change it. It appeared that previous to the making of the two wills given in evidence he had made another will, and it turned out that the conversation was concerning this prior will. The court held the question was proper, as bearing on the question of his capacity to make the will in controversy and on the question of undue influence. The witness answered as follows: "He said he had made his will and left them all alike. I said to him that was right— that they had all worked hard for it. That was all that was said about the will. I did not ask him how he made it." This answer was clearly improper, and prejudicial to the proponents of the will. It did not tend to prove either mental incapacity or undue influence. Its effect was to impress upon the minds of the jury that at that time the testator had declared his intention of treating all his children alike, and had so made his will, and that his brother, the witness, was of the opinion that that was the right thing to do,—that all the children had

worked hard for the property. It is obvious that the jury would not regard such evidence as tending to establish mental unsoundness, but only as proof of the double fact that both brothers thought it was right to treat all the children alike, and that the testator had so made his will. But the court could not know in advance what answer the witness would make. A perfectly proper answer might have been made in direct response to the question, so far as the court could see. The time of this conversation—only a few months before the making of the will in controversy—was sufficiently near to that event to make it proper to prove what the testator said and did, in connection with other facts and circumstances, as tending to prove the issue of mental unsoundness. The part of the question as to how he acted was not answered. The question, taken as a whole, called for an answer bearing upon the question of his mental condition, and so was a proper one. But the answer had no such bearing, and was improper, and ought to have been excluded and its effect corrected by instructions. This the trial judge would doubtless have done had such action been requested by the proponents. No such request was made. No action by the court was requested and none taken upon which plaintiffs in error can now predicate error and ask a reversal of the decree. The declarations of the testator, made before and after the execution of the will, are proper to be proved, so far as they tend to show his mental condition at the time the will was executed, and the question as asked was proper for the purpose of eliciting such testimony. (*Reynolds* v. *Adams*, 90 Ill. 134.) And it is held that a prior will, and statements and declarations of the testator made at a time when his mental capacity was undisputed, as to the manner in which he had disposed of his property by a prior will which has been destroyed, are admissible in evidence, where it appears that such disposition of his property by such prior will is approximately the same as that made

by the contested will, as tending to rebut the idea of undue influence. (*Roe* v. *Taylor*, 45 Ill. 485 ; *Taylor* v. *Pegram*, 151 id. 106.) And in the case at bar the plaintiffs in error gave in evidence a canceled will of the testator, made a few months before the will in controversy was made, the provisions in both wills being in the main substantially the same.

But plaintiffs in error insist that the trial court applied a different rule when they were producing their evidence from that applied to the testimony of Louis Hill, and refused to permit them to prove by the witness Lacy what the testator said to him, in conversations had before the death of his wife, about the disposition of his property. We do not think the point is well taken. This witness testified to frequent conversations and business transactions with George Hill, had up to the death of his wife; that they lived across the street from each other and frequently visited back and forth, and that in the opinion of the witness, he, Hill, was capable of transacting ordinary business; that as far as he could see Hill was of sound mind, and that if there was anything wrong with his mind he could not discover it; that at different times he talked about the disposition of his property, but that witness paid but little attention to it; that he, Hill, and his wife, would talk about different things; "at times they would talk about their property,—that it was theirs, and they intended to dispose of it as they saw fit," and that he never made any inquiry about how they were going to do it or anything of the kind; that he never heard Hill say anything about the last will, that was made after his wife died, but before that they talked as though they already had a will made. Had plaintiffs in error offered to prove by this witness statements and declarations of George Hill tending to show mental capacity at the time of the execution of the will sought to be set aside, or tending to rebut the idea that its execution was procured by undue influence, in addition to

what was testified to by the witness, we think, under the rule above stated, the proof should have been admitted. But as the record stands we cannot see that plaintiffs in error were prejudiced by the ruling of the court in the respect complained of, as the question was substantially answered notwithstanding the objection, and we think it appears that the witness, in answer to other questions, stated the substance of the conversations inquired about.

It is next objected that the court erred in refusing to admit in evidence certain receipts drawn by the witness Worman, at the request of George Hill, to take the place of others purporting to have been given to him by some of his children, and which were not dated, or were otherwise defective, as stated by Hill. This witness stated all that was said by Hill, and described the transaction. The receipts were not offered as having any bearing on the question of mental capacity, but as evidence of what was contained in them,—as showing the receipt of money from the testator by some of his children. These supposed receipts are not set out in the record, and we have no means of knowing what they were, and, so far as the record discloses, were mere unsigned copies, or corrected receipts, intended by the testator to take the place of others already executed which he thought were defective. What the contents of the receipts, or any of them, were, the record does not disclose. No error in this ruling is shown.

Counsel also insist that there was no evidence tending to show undue influence, and therefore it was improper for the trial court to give certain instructions which were given on behalf of the complainants on this issue in the case. We do not think it can be said there was no evidence bearing upon this issue. Besides, plaintiffs in error themselves asked, and the court gave, instructions on their behalf on the issue as to undue influence. Plaintiffs in error are therefore in no position to complain of the action of the court in this regard. *Greene* v. *Greene, supra.*

Other criticisms are made upon the instructions given for complainants, but after a careful examination of the instructions we find them to be substantially correct.

The decree of the circuit court will be affirmed.

*Decree affirmed.*