Yvonne Dailey Schoolfield, Plaintiff-Appellant, v. Edward Witkowski and Anton Tun, Defendants-Appellees.

Gen. No. 49,315.

First District, Third Division.

December 17, 1964.

Coghlan, Coghlan and Joyce, of Chicago (James L. Coghlan, of counsel), for appellant.

Hubbard, Hubbard, O'Brien & Hall, of Chicago, for Edward Witkowski, appellee. Jacobs and McKenna, of Chicago (Royce Glenn Rowe and Barry L. Kroll, of counsel), for Anton Tun, appellee.

MR. JUSTICE SULLIVAN delivered the opinion of the court.

This is an appeal from a judgment of the circuit court of Cook County entered on a jury verdict finding in favor of both defendants, Edward Witkowski and Anton Tun, and against the plaintiff, Yvonne Schoolfield, and also from the refusal of the trial court to grant plaintiff's post-trial motion seeking judgment notwithstanding the verdict, or, in the alternative, a new trial.

The action was brought to recover damages for personal injuries allegedly sustained in an automobile collision which occurred on February 23, 1961, in the intersection of Hoyne and Armitage Avenues in the city of Chicago.

The plaintiff sets up the following points in support of her appeal: (1) the court erred in denying plaintiff's motion for judgment notwithstanding the verdict; (2) the verdict and the judgment entered thereon are contrary to the manifest weight of the evidence; (3) it was error for defendant Tun, after calling the plaintiff's husband as his own witness, to refer to him as hostile and adverse and to impeach him; (4) it was error to allow, over objection, the admission into evidence of photographs which disclosed the existence of stop signs regulating the movement of traffic on the street on which plaintiff was traveling, where no proper foundation was laid for their admission; (5) it was error to allow the impeachment of plaintiff on irrelevant, immaterial and prejudicial matters and to allow the interrogation of witnesses relative to the plaintiff's whereabouts on the evening prior to the accident and other immaterial matters in order to suggest to the jury that plaintiff was a person of loose and lax morals; (6) reversible error was committed when defendant Witkowski laid a foundation to impeach plaintiff and then failed to offer proof that the plaintiff had in fact made the

117

allegedly impeaching statements; (7) it was error for the court to allow testimony regarding bus schedules on Armitage Avenue to stand despite the fact that none of the eyewitnesses testified to having seen any buses at the time of the collision; (8) defendant Tun committed prejudicial error by cross-examining and impeaching plaintiff's doctor on immaterial matters; (9) it was error to permit an automobile mechanic, not an eyewitness to the collision, to be cross-examined relative to his opinion about the main point of impact to defendant Tun's car; (10) it was error to permit defendant Witkowski to testify that plaintiff's driver had been drinking without specifying upon what, if any, facts or circumstances he based his conclusion, and (11) the arguments of the defense attorneys were inflammatory and prejudicial.

On the morning of February 23, 1961, the plaintiff was a passenger in an automobile being driven by her fiance, Richard Schoolfield (their marriage postdated the accident). Shortly before 7:00 a. m. on the morning in question, the Schoolfield automobile was traveling in a northerly direction on Hoyne Avenue approaching the intersection of that street with Armitage Avenue, and the vehicles of defendants, Edward Witkowski and Anton Tun, were traveling in an easterly direction on Armitage Avenue approaching the same intersection. There were two eastbound lanes on Armitage Avenue. Defendant Witkowski's automobile was in the southerly eastbound lane on Armitage. Defendant Tun's automobile was in the northerly eastbound lane of Armitage Avenue next to and about one-half car length behind defendant Witkowski's automobile. There was conflicting testimony as to the speeds of the three automobiles and their relative locations just prior to the accident. The collision occurred in the southeast quadrant of the intersection. The front end of defendant Witkowski's auto-

mobile came in contact with the right rear portion of the Schoolfield automobile and then the Schoolfield and Tun automobiles collided.

In support of her first two contentions, that the court erred in denying plaintiff's post-trial motions and that the verdict was against the manifest weight of the evidence, plaintiff cites Ill Rev Stats 1959, chap 95½, par 165. That paragraph reads in pertinent part:

> "165. sec 68 Vehicles approaching or entering intersection.
>
> (a) The driver of a vehicle approaching an intersection shall yield the right-of-way to a vehicle which has entered the intersection from a different highway.
>
> (b) When two vehicles enter an intersection from different highways at approximately the same time, the driver of the vehicle on the left shall yield the right-of-way to the vehicle on the right."

■ There was conflicting testimony regarding the position of the various cars just prior to the collision, the speed at which the respective vehicles were traveling, and other material matters. It was the proper function of the jury to determine which parts of the conflicting testimony to believe. Jackson v. Gordon, 37 Ill App2d 41, 44, 184 NE2d 805.

■ A motion for judgment notwithstanding the verdict presents the single question whether there is in the record any evidence which, standing alone and taken with all of its intendments most favorable to the party resisting the motion, tends to prove the material elements of the case. Zide v. Jewel Tea Co., 39 Ill App2d 217, 226, 188 NE2d 383.

■■ The court properly denied plaintiff's motion for judgment notwithstanding the verdict. There was evidence from which the jury could have concluded

119

that defendants' automobiles entered the intersection before the automobile in which the plaintiff was riding. Under the above statutory provision (Ill Rev Stats 1959, c 95½, § 165) it would, under such circumstances, have been the duty of the plaintiff's driver to yield the right-of-way to defendants' automobiles. Whether or not the defendants were guilty of any negligence was a proper question for the jury, and we cannot say that its determination was entirely without support as would have been required in order to grant plaintiff's motion for judgment notwithstanding the verdict, nor can we say that it was against the manifest weight of the evidence. Storment v. Swift & Co., 5 Ill App2d 417, 125 NE2d 697.

Counsel for defendant Tun prefaced his examination of the plaintiff's husband, who was called as defendant Tun's witness, with a request to impeach the witness and have him declared hostile or adverse if the need arose. During the direct examination of this witness, counsel for defendant Tun asked him if, during a discovery deposition taken on November 16, 1961, the following questions had been posed, and if he had made the following answers: "Q. At the time you first saw these vehicles, were you able to form an opinion as to the speed of either one of them? A. They didn't look like they were going too fast at that time. Q. Were you able to form an opinion as to their speed? A. About twenty-five miles an hour." Schoolfield answered, "I don't remember whether I did or not, Sir." The witness had previously testified on the stand that the defendants' vehicles were traveling about thirty-five miles an hour. Defendant Tun was subsequently allowed to offer proof that the above questions had been put to the witness at the discovery deposition, and the witness made the above answers.

The case of Finch Bros. v. Betz, 134 Ill App 471, was an action brought to recover a $200 commission allegedly due the plaintiff upon the sale of certain horses. The purchaser was one J. E. Nye. After defendant refused to pay the commission demanded, plaintiff prepared and procured Nye to sign a letter addressed to plaintiff, purporting to set forth the facts relating to the transaction as Nye knew them, and to which it was stated, he was willing to testify. Nye was called to testify by the plaintiff, and his testimony differed in many particulars from the facts as set forth in the letter. The court admitted the letter in evidence over defendant's objection. The appellate court in reversing the decision of the trial court in favor of the plaintiff, said on page 477:

"If the witness, Nye, unexpectedly to appellee, gave testimony which was at variance with the statement in question, appellee had a right to call his attention to such statement for the purpose of refreshing his memory or awakening his conscience. It was not proper to introduce the same evidence either for the purpose of having the jury consider it as independent evidence or for the purpose of impeaching the witness."

■■■■ The court was applying the general rule that when a witness unexpectedly gives testimony against the party calling him, such party has the right to examine him and by such examination to show that the witness is giving unexpected testimony, and to specifically call the attention of the witness to former statements made by him for the purpose of refreshing his memory or awakening his conscience, and to cause him to relent and speak the truth if he was lying. This, however, is as far as the party may go, and under no circumstances may he show, either by the

written statement of the witness or by other witnesses, that the witness did, in fact, make those statements. McCray v. Illinois Cent. R. Co., 12 Ill App2d 425, 139 NE2d 817; People v. Michaels, 335 Ill 590, 167 NE 857. The above rule springs from, and is something of an exception to, the general rule that a party to a suit cannot impeach a witness voluntarily called by him, except as that result may be incidentally accomplished by proving a state of facts differing from that sworn to by the witness in question. Devine v. Johnston & Jennnings Co., 189 Ill App 556; People v. Johnson, 314 Ill 486, 145 NE 703. Defense counsel argues that plaintiff's husband could have been called under Section 60 of the Civil Practice Act (Ill Rev Stats 1959, c 110, § 60), and that, if he had been so called, the impeachment would have been proper. No attempt was made to call the witness under this section, so, it is not necessary to decide whether he could have been so called or whether the impeachment would have been authorized had he been so called. There can be no doubt that the improper impeachment of plaintiff's husband amounted to prejudicial error requiring a reversal of the verdict in favor of the defendants.

A close examination of defendants' Exhibit #3 discloses the existence of a stop sign on the northeast corner of the intersection of Hoyne and Armitage Avenues regulating traffic southbound on Hoyne. There was uncontradicted testimony in the record that the intersection was uncontrolled. Defendant Tun testified, "Exhibits 2 to 5 truly and accurately show the intersection of Hoyne and Armitage." The court asked the time when the photographs were taken but this question was not answered, and plaintiff's counsel objected to the admission of the exhibits based upon defendant's failure to show that the photographs portrayed the area as it existed at the time of the

accident. Tun was then asked by his counsel if there were leaves on the trees at the time of the accident, and he said no. The photograph showed leaves on the trees. Plaintiff's counsel then stated that his objection was not to the foliage. Exhibits #2, 3, 4, 6 and 7 were subsequently admitted into evidence.

 The jury members could have noticed the stop sign in defendant's Exhibit #3 and been led to believe, despite the testimony to the contrary, that the intersection was controlled at the time of the collision. The foundation for the admission into evidence of the exhibits was improper. In order to have photographs admitted into evidence it is necessary that they be identified by a witness as portrayals of certain facts relevant to the issues and verified by such witness on personal knowledge as correct representations of the facts. Kooyumjian v. Stevens, 10 Ill App 2d 378, 388, 135 NE2d 146. Changed conditions at the time of the taking do not necessarily render a photograph inadmissible if it can be shown by testimony that after the changes are explained, the jury will be able to understand it clearly as a correct representation and not be misled by it. Terry v. City of Chicago, 320 Ill App 342, 344, 51 NE2d 71; Rehnbloom v. City of Berwyn, 329 Ill App 327, 68 NE2d 479. No attempt was made here to explain the changed condition, and as has been said, the jury could have been led to believe that the stop sign was present at the time of the collision. Under these circumstances, the admission of defendant's Exhibit 3 was prejudicial error.

██ ██ Plaintiff objects to the cross-examination of her by the attorneys for the defense and alleges that she was improperly impeached thereby. Several questions were asked of the plaintiff relating to her actions on the night preceding the accident. These questions were objected to, and the court sustained the objections. We do not believe that the questions

were of such a prejudicial nature that the seasonable rulings of the trial judge failed to obviate any error arising therefrom. If the plaintiff was not satisfied with the trial court's ruling on her objections her proper course was to ask for a mistrial. LaBelle v. Brown, 46 Ill App2d 87, 196 NE2d 389.

 Plaintiff also objects to the testimony of Jean Campbell, with whom she roomed at the time of the accident, who was called as a witness for defendant Witkowski. Plaintiff alleges that this witness was called for the sole purpose of impeaching her on a collateral and immaterial matter. Plaintiff had testified that she slept in the room of one Pat Silikowski on the night before the accident, and that on the morning of the accident she arose at 6:00 a. m., got dressed and went to her own room where she exchanged coats. Her roommate testified that plaintiff entered their room about 5:00 a. m. on the morning of the accident, got her coat from the closet and left. Defense counsel for Anton Tun then asked the witness how she knew what time it was, and the witness answered, "Well, when Yvonne would come in, I would wake up, and I would usually look at the clock thinking, well, maybe it is time for me to get up or something like that." The plaintiff objected and asked that the answer be stricken. The court then said, "Part of the answer may be stricken about looking at the clock." Plaintiff's counsel then asked, "Pardon me your honor. May everything but look at the clock be stricken?" The court replied, "No, it is the other way. Everything else may be stricken except how she found out what time it is." Since there was nothing in the statement of the witness regarding how she found out what time it was, the ruling in effect struck the whole answer, but the ruling was sufficiently ambiguous as to leave the jury in a state of confusion as to what, if anything, was left

124

of the answer for them to consider. The witness testified about what she usually did, not what she did on the morning in question. Her answer was irrelevant, and, in addition, it may have led the jury to believe that the plaintiff was in the habit of staying out all night. This impression was further strengthened by counsel for defendant Tun when he next asked the witness what time she usually got up during the period around the date of the accident, and the witness was allowed to answer over objection, "Usually around 6:00 o'clock." Collateral impeachment which impugns the morals of a party to the cause of action cannot be countenanced, and although the conduct here complained of may not have been sufficiently prejudicial to warrant reversal, we feel that since the case must be retried, the attorneys and the trial judge will be guided by the views expressed herein.

■■■ On cross-examination, counsel for defendant Witkowski asked the plaintiff, "and did you tell us in your deposition at the time you yelled 'look out' the cars were only about seven or eight feet away from you?" The witness replied that she didn't know whether or not she had made that statement, and to the best of her recollection they were farther away than seven or eight feet when she yelled. Earlier, plaintiff had testified that when she yelled "look out," the defendants' cars were between the alley and the intersection; they were maybe half way between the alley and the intersection. Since plaintiff had also testified that the alley was about 120 to 130 feet from the intersection, there was an apparent conflict between her testimony on the stand and the alleged deposition testimony. Once the foundation for impeachment by prior inconsistent statements has been laid, it is incumbent upon counsel, having laid such foundation to offer proof of the alleged impeaching statements. Miller v. Chicago Transit Authority, 3 Ill App

2d 223, 228, 121 NE2d 348; Gordon v. Checker Taxi Co., 334 Ill App 313, 318, 79 NE2d 632. The respective positions of the vehicles just prior to the accident was a very important element in the present case, and it was highly prejudicial for counsel for defendant Witkowski to lay a foundation to impeach plaintiff's testimony on this material point and then to fail to offer proof of the allegedly impeaching statements.

 Additionally, plaintiff was asked, "And also in your deposition didn't you testify there was only about one or two seconds after the time you first saw the cars until the point of impact?" Plaintiff said that she did not know whether or not she had so testified. On direct examination the plaintiff had testified that about three seconds elapsed from the time she first saw defendants' vehicles until the impact. On cross-examination she altered this period of time to from three to four seconds. While it was incumbent upon counsel, having laid a foundation for impeachment by a prior inconsistent statement, to offer proof of the alleged impeaching statement, nevertheless, in view of the slight inconsistency in her previous statement and her statement on the witness stand in this respect, the counsel's failure to offer proof of the alleged impeaching statement would not constitute reversible error.

 Although testimony regarding bus schedules on Armitage Avenue was immaterial and should not have been allowed to stand, plaintiff was not substantially prejudiced thereby. Plaintiff's Exhibit #1, a plat of the intersection of Hoyne and Armitage Avenues, which was introduced into evidence, bore the designation "BUS STOP" on Armitage Avenue at the northeast and southwest corners of the intersection. Accordingly, the plaintiff had already brought

to the jury's attention the fact that buses ran on Armitage Avenue.

██ ██ On cross-examination counsel for defendant Tun asked plaintiff's expert witness, Dr. David Fisher, about the number of times he had testified in various trials in the year preceding the trial. He then asked if his testimony had not always been for the plaintiff, "the person seeking to gain money." These questions were objected to, but the objections were overruled by the court. We believe that the above questions were intended to show that the witness was biased in favor of the plaintiff, but asking whether the witness had, in the past year, testified only for plaintiffs, was improper cross-examination. Plambeck v. Chicago Rys. Co., 294 Ill 302, 305, 128 NE 513. Any error arising from these questions, though, was harmless in the present case. The witness' direct testimony was restricted to the question of damages, and since the jury found for the defendants on the issue of liability, they never reached the question of damages. Olofsson v. Wood, 23 Ill App2d 32, 44, 161 NE2d 681.

██ No error arose from questioning Raymond Anderson, an automobile mechanic, about the main stress or blow to the automobile of defendant Tun. The witness was not asked to reconstruct the accident, or even to tell the point of *initial* impact. His only testimony was to the effect that the *main* impact was to the right side of defendant Tun's car.

██ ██ On direct examination, defendant Witkowski was asked if he had noticed anything about Mr. Schoolfield's breath. Mr. Witkowski answered: "He had been drinking." Plaintiff interjected a general objection which was overruled. It would have been perfectly proper for the witness to testify that Mr. Schoolfield was intoxicated, or that he smelled alcohol

on Mr. Schoolfield's breath, but the answer, "He had been drinking," was at best ambiguous. It would certainly have led the jury to believe that Mr. Schoolfield had been drinking intoxicants although the answer did not specify what the witness thought Mr. Schoolfield had been drinking. Plaintiff should have made a motion to strike the answer or have asked the court to instruct the jury to disregard it; having failed to do so, she cannot now rely on the error. A general objection is insufficient to preserve the error where a proper question is posed, but the answer thereto is objectionable. Hill v. Bahrns, 158 Ill 314, 318, 41 NE 912; National Syrup Co. v Carlson, 155 Ill 210, 217, 40 NE 492; Chicago, P. & St. L. R. Co. v. Blume, 137 Ill 448, 451, 27 NE 601.

██ Plaintiff failed to object to those portions of defense counsels' closing arguments on which she now relies for reversal. As a general rule an objection to an improper argument must be made at the time of the occurrence. Lindroth v. Walgreen Co., 407 Ill 121, 136, 94 NE2d 847; Minters v. Mid-City Management Corp., 331 Ill App 64, 75, 72 NE2d 729. If, however, such arguments are so prejudicial and reprehensible that the parties cannot receive a fair trial, and the judicial process cannot stand without deterioration, the reviewing court will consider assignments of error even though no objection was made at the time of the occurrence. Belfield v. Coop, 8 Ill2d 293, 313, 134 NE2d 249; City of Quincy v. V. E. Best Plumbing & Heating Supply Co., 17 Ill2d 570, 577, 162 NE2d 373. We do not consider the errors here assigned to be of such magnitude. The only other exception to the general rule is that counsel will not be required to make repeated objections to improper arguments where the attitude of the trial court is clear, and repetition of the objections would aggravate the situation and tend

to prejudice the jury. Chicago Union Traction Co. v. Lauth, 216 Ill 176, 180, 74 NE 738; McWilliams v. Sentinel Publishing Co., 339 Ill App 83, 109, 89 NE 2d 266. Such a situation is not apparent from the record in the case before us. The plaintiff having failed to seasonably object to the arguments of opposing counsel, we will not now consider this point.

■ In his brief, defendant Tun tries to avoid the effect of certain errors by claiming that such errors were interjected by his codefendant and should not affect the validity of the judgment in his favor. The errors referred to were such that they would prejudice plaintiff's whole case, and whether or not defendant Tun was responsible for them, justice demands that plaintiff have the opportunity to present her case before a jury free from prejudice engendered by trial errors.

The judgment of the circuit court of Cook County is reversed, and the cause is remanded for a new trial.

Reversed and remanded.

SCHWARTZ, P. J. and DEMPSEY, J., concur.