(No. 37506.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* RED BUSH, Plaintiff in Error.

*Opinion filed November 26, 1963.*

EUGENE M. RUARK, of Chicago, appointed by the court, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, and ELMER C. KISSANE and MATTHEW J. MORAN, Assistant State's Attorneys, of counsel,) for the People.

Mr. CHIEF JUSTICE KLINGBIEL delivered the opinion of the court:

The grand jury of the criminal court of Cook County returned three indictments against the defendant, Red Bush, each charging him with murder. He was tried by the court without a jury on an indictment charging him with the murder of his wife, Grace Bush, and after a finding of guilty it was stipulated that the evidence which had been heard in that case could be considered by the court on the other two indictments, which charged the defendant with the murders of William Ostler and Claude Colville. The court entered findings of guilty on these two indictments and the defendant was sentenced on each indictment to a term of 199 years, with the sentences to run concurrently. We have issued a writ of error to review the judgments of conviction.

The defendant contends that the evidence was insufficient to establish his guilt beyond a reasonable doubt, and in the alternative, argues that he was guilty of the crime of manslaughter rather than murder. William Johnson testified that he met the defendant in Cincinnati, Ohio, on January 11, 1961. The defendant told him that he wanted to purchase a gun but was unable to do so because he had no identification. Johnson and the defendant went to Newport, Kentucky, where Johnson purchased a gun with money furnished by the defendant. At the time of the purchase the seller gave Johnson a receipt and Johnson gave this receipt to the defendant, who purchased shells for the gun. Johnson and the defendant then came to Chicago by bus and went to the home of the defendant's mother. On January 15, Johnson went with the defendant to an apartment where the defendant's wife lived. The defendant went up the stairs with the gun in his hand and Johnson followed him. The defendant entered an apartment on the second floor and Johnson heard the defendant say, "That's the fellow I want to see," and heard a man inside the apartment say, "I don't want you here. I'm not scared of your gun." Johnson heard two shots and when he stepped to the door he saw a man falling to the floor. Johnson left and went back to the

defendant's mother's home. On cross-examination it was brought out that Johnson had been indicted as a result of this shooting but that the charges had been dropped.

Ichija Tanaka testified that at the time of the shooting he was in the bedroom of the apartment. Mrs. Bush, Colville and Ostler were in another room, which was separated from the bedroom by a curtain. Tanaka heard the doorbell ring and heard Colville say, "Get out". He then heard shots and heard Mrs. Bush say, "Oh, Red!" Tanaka fled from the apartment and returned in 10 or 15 minutes. Upon his return he saw that Colville and Ostler were dead and Mrs. Bush was in a critical condition.

Officer John Coughlin testified that he arrested the defendant several hours after the shootings in the basement of his mother's home. The defendant told the officer that his name was Johnson. The officer searched the defendant and found the receipt which had been given at the time the gun had been purchased. The defendant was taken to the hospital where Mrs. Bush was being treated in the emergency room. She was asked to identify the defendant and she said "Yes, that's my husband, Red. He shot me and the other two men." The defendant remained silent at the time of this accusation.

Officer Walter Anderson testified that he searched the basement where the defendant was arrested and found the gun and some cartridges. Another officer testified as to an alleged dying declaration by Mrs. Bush, but his testimony was ultimately ruled inadmissible. Another officer testified to a second alleged dying declaration and this testimony was likewise ruled inadmissible. This officer also testified that Mrs. Bush accused the defendant of shooting her and the other men and that the defendant remained silent.

The defendant testified that he had been separated from his wife for about 3 months prior to the shooting and had been living in Ohio. In January his wife called him and told him that she was sorry for what she had done and asked the

defendant to come and take her home. The defendant testified that on January 11 Johnson told the defendant that he wanted to buy a gun and he went with Johnson to Newport, Kentucky, where Johnson bought a gun. The defendant testified that he did not purchase any shells and that Johnson kept the gun. The defendant told Johnson that he was going to Chicago to pick up his wife and offered to pay Johnson's fare to Chicago and back if he would go along and help with the children. When they arrived in Chicago they went to the defendant's mother's house where they stayed for several days. On the 15th the two men went to the apartment where Mrs. Bush was living. Johnson stayed outside and the defendant went upstairs and knocked on the door of the apartment. Mrs. Bush admitted him to the apartment and then sat down on Ostler's lap and Ostler kissed her. The defendant started to leave the apartment and someone hit him in the back of the neck. The defendant testified that he did not have a gun in his possession when he went to the apartment. According to the defendant he remembered nothing which had occurred from the time he was hit on the back of the neck until he woke up in the county jail. On cross-examination he was asked whether he remembered making any statement to the police and he testified that he did not remember making any statements. He was asked about the receipt which was found in his possession and he testified that Johnson had given him the receipt at the time the gun was purchased and that he had placed the receipt in his wallet.

In rebuttal, officer Orville Anderson testified that the defendant had told him that he saw Johnson draw a gun in the apartment and that the defendant wrestled with Johnson. The defendant told the officer that the gun was discharged when he and Johnson were struggling. Another officer also testified that the defendant had made a statement blaming Johnson for the shooting.

The defendant contends that Johnson's testimony is un-

worthy of belief because of his self-interest in implicating the defendant in order to escape prosecution. It was brought out at the trial that Johnson had been indicted in connection with the shootings and that the charges had been dropped. The alleged self-interest of Johnson was therefore brought to the attention of the trial judge, who determined that Johnson's testimony was more worthy of belief than that of the defendant. The defendant also argues that no adverse inference should be drawn from the fact that the defendant remained silent in the face of his wife's accusation and argues that there is no evidence in the record that the defendant heard the statement. Direct proof that a defendant heard an accusation is seldom possible, and determination of this fact must be made from the surrounding circumstances. Whether the accusation was heard and whether the circumstances were such that a response would normally be made, are questions for the trial judge to determine. *People* v. *Homer,* 8 Ill.2d 268, 273.

The defendant further urges that the rebuttal testimony was improper since the defendant did not deny making the statements but only testified that he did not remember making them. Where a witness is asked concerning the making of statements at variance with his testimony and states that he does not remember making such statements it is competent to prove by way of impeachment that the statements were made. (*People* v. *Preston,* 341 Ill. 407, 419.) The statements made by the defendant to the officers shortly after the crime, in which he attempted to place the blame upon Johnson, were inconsistent with his testimony at the trial that he remembered nothing after the blow on the back of his neck, and were therefore properly admitted.

The defendant also argues that the statements were inadmissible because they were obtained during a period of illegal detention. This issue is not properly before us, for no such claim was made in the trial court. However, even if the claim were available on review, it could not be sus-

tained. In the first place, the statements in question were exculpatory in nature and were not confessions. Furthermore, the claim is based upon the Federal rule set forth in *McNabb* v. *United States,* 318 U.S. 332, 87 L. ed. 819, and *Mallory* v. *United States,* 354 U.S. 449, 1 L. ed. 2d 1479, which we have declined to follow. *People* v. *Stacey,* 25 Ill.2d 258.

It is also urged that the gun was improperly admitted in evidence. Johnson identified the gun as the one purchased by the defendant in Kentucky and the gun was found in the basement where the defendant was hiding. In our opinion the gun was sufficiently identified and was properly admitted in evidence. The defendant also contends that the gun was obtained as the result of an illegal search. This contention was not advanced at the trial and cannot be considered on review. We are satisfied from a review of all of the evidence that the defendant's guilt was established beyond a reasonable doubt.

In support of the defendant's alternative claim that the killings amounted to manslaughter instead of murder, the defendant argues at some length that where a husband kills an adulterous spouse and her paramour when he discovers them in a compromising situation, sufficient provocation exists to make the homicide manslaughter rather than murder. Numerous authorities from other jurisdictions are cited in support of this claim. We find it unnecessary to decide the issue raised by the defendant, for the facts do not support the argument. The evidence showed that the defendant purchased the gun four days before the shootings and that he entered the apartment with a gun in his hand. This evidence of premeditation is inconsistent with the defendant's claim that he killed his wife and the other men in the sudden heat of passion engendered by finding his wife in the apartment with the other men.

The defendant also contends that he was deprived of due process of law by reason of the fact that evidence of all

three killings was introduced in the defendant's separate trials for the murder of one person. In similar cases evidence of other deaths has been held admissible on a trial for murder where it appeared that the evidence of the other deaths was inseparable from the evidence in the case on trial. (*People* v. *Weger*, 25 Ill.2d 370, 382; *People* v. *Ciucci*, 8 Ill.2d 619, 625.) The defendant argues, however, that in these cases there was no proof that evidence of the other crimes influenced the jury in determining the punishment. The defendant points out that in the present case the trial judge stated that in view of the fact that the defendant had killed three people the court would follow the State's recommendation of 199 years. The judge also remarked that because of the 3 deaths the defendant was fortunate to escape the death penalty. The defendant urges that "fundamental unfairness" resulted from the fact that the sentence was influenced by evidence of the 3 deaths in each separate case. We cannot agree. Even if evidence of the other deaths had not been admitted at the trial, the court would have had the right to consider this evidence at a hearing in aggravation. (Cf. *People* v. *Seger*, 405 Ill. 222, 231.) We find no prejudicial error in the fact that evidence of all three killings was introduced in each separate trial.

Finally, the defendant contends that he was represented at his trial by incompetent appointed counsel. In support of this charge the defendant claims that his attorney should not have permitted the defendant to waive his right to trial by jury. The record shows that the defendant was sufficiently advised of his rights to a jury trial and that he knowingly waived this right. The choice was therefore the defendant's own and cannot be made the basis for a charge that his counsel was incompetent. Furthermore, even if it could be said that the election to waive a jury trial was made in reliance upon counsel's advice, there is nothing in the record to show that the defendant was in any way prejudiced by the waiver of a jury trial. The defendant also con-

tends that his attorney improperly permitted the second and third indictments to be tried by stipulated evidence before the same judge who had heard the first case. A stipulation of evidence does not indicate incompetence of counsel. (*People* v. *Hare*, 25 Ill.2d 321, 324.) Nothing could have been gained by requiring each witness to testify again on the second and third indictments. The defendant argues that because the judge had already found him guilty in the first case, and the evidence in the other cases was identical, the judge was bound to find him guilty in the other two cases. While this may be true, we are of the opinion that no prejudice resulted in view of the fact that the evidence of the defendant's guilt was overwhelming. The defendant also contends that the sentences in the second and third cases were excessive because the judge had heard the evidence in the first case. The penalty imposed on the second and third charges was the same as that on the first and we cannot agree that the defendant was prejudiced by the procedure which was followed.

We are satisfied from a review of the record that the defendant received a fair trial and that his guilt was established beyond a reasonable doubt. The judgments of the criminal court of Cook County are affirmed.

*Judgments affirmed.*