**Janice Vancil, Plaintiff-Appellant, v. Ed Fletcher and Charles Mitroka, Defendants-Appellees.**

**Gen. No. 67–56.**

Fifth District.

December 21, 1967.

MORAN, J., dissenting.

Harris, Holbrook & Lambert, of Marion, for appellant.

James B. Bleyer, of Marion, and Bill F. Green, Feirich & Feirich, of Carbondale, for appellees.

EBERSPACHER, J.
This is an appeal from a judgment for the defendants in an action for personal injuries.

The occurrence in question involved a collision wherein the plaintiff, Janice Vancil, was riding as a guest passenger in the automobile of the defendant, Charles Mitroka. The automobile driven by the defendant Mitroka, collided with an automobile driven by the defendant, Ed

Fletcher, at the intersection of West Main and Oakland Street in Carbondale, Illinois, on May 19, 1963. The plaintiff was riding in the back seat of defendant Mitroka's automobile on the right side. The plaintiff's husband was also seated in the back seat and the defendant Mitroka's wife was seated in the front passenger seat. Two small children of the parties were also riding in the automobile, one in front and one in the rear. The defendant Mitroka was driving his automobile east on West Main Street. He approached the intersection of West Main at approximately 4:30 p. m. It was a "nice day" and the road was dry. Upon approaching the intersection, the traffic signal indicated red and Mitroka stopped at the signal in the left lane next to the center. There were two eastbound lanes and two westbound lanes on this portion of West Main Street.

While stopped at the intersection waiting for the light to change, a car on the opposite side of the intersection in the inside lane indicated an intention to turn left to the south. When the light turned green, the defendant Mitroka commenced a turn to the left. Mitroka testified that before making his turn he saw no traffic in the outside, or north, lane of the westbound traffic, however there were six to eight cars lined up in the inside lane on the opposite side of the intersection. After Mitroka got partly into the intersection and while starting to make his left turn, the plaintiff as well as the plaintiff's husband, testified that they observed the automobile driven by the defendant Fletcher approaching from the east in the outside westbound lane. The plaintiff testified that she observed the Fletcher car 75 feet east of the intersection and was of the opinion that it was traveling 40 miles per hour. The plaintiff's husband also stated he first saw the Fletcher automobile about 75 feet east of the intersection. Neither the plaintiff nor her husband made any comment to their driver Mitroka but continued to watch the Fletcher car upon its collision course. Neither of the defendants, Mit-

roka or Fletcher, decreased the speed of his vehicle prior to impact. The front end of the Fletcher vehicle struck the right rear quarter panel of the Mitroka vehicle.

As a result of the collision, the plaintiff received multiple contusions and abrasions and lumbosacral sprain.

The plaintiff's complaint, as amended, alleged willful and wanton misconduct against Mitroka in driving his automobile and negligence against Fletcher in driving his automobile. The cause also includes a counterclaim by Mitroka against Fletcher for property damage to his automobile. Mitroka's counterclaim alleged negligence of Fletcher in driving his automobile. The jury rendered a general verdict in favor of both defendants and for defendant Fletcher on the counterclaim of Mitroka. In answer to three special interrogatories the jury also indicated: (a) that the defendant Fletcher was guilty of negligence, (b) that the counterplaintiff Mitroka was guilty of contributory negligence, and (c) that the defendant Mitroka was not guilty of willful and wanton misconduct. This appeal is taken by the plaintiff on the judgment rendered on the verdicts. No appeal is taken on the counterclaim.

In support of the plaintiff's effort to reverse the judgment, the plaintiff alleges that the trial court erred in denying plaintiff's post-trial motion for judgment notwithstanding the verdict against both defendants and that the trial court erred in denying plaintiff's post-trial motion for a new trial against both defendants. In support of the latter motion, the plaintiff alleges, that the jury's answer to the Special Interrogatories and their verdict was against the manifest weight of the evidence, the defendant Mitroka's use of improper impeachments, and that the trial court erred in denying directed verdicts against both defendants.

Turning first to the specific allegation of errors, the plaintiff alleges six specific incidents of improper impeachment by the defendant Mitroka. The first alleged

281

error concerns the testimony of the witness Robert Vancil, the husband of the plaintiff. The witness, Robert Vancil, was called to the witness stand by the defendant Mitroka during the presentation of the defendant Mitroka's case. The defendant Mitroka initially sought to call Robert Vancil for the purpose of cross-examination but after an exchange between counsel without any ruling by the court, counsel for Mitroka stated he would call Robert Vancil as his own witness. It might be noted at this point that Robert Vancil was originally a party plaintiff to the cause but had been dismissed prior to trial. The witness had also previously testified as a witness in the plaintiff's case.

The first question asked of the witness Robert Vancil was whether he had discussed with his wife's employer the reason for her ceasing her employment to which the witness replied in the negative. The witness was then asked if his wife ever told him where the Fletcher automobile came from immediately before the collision. The witness replied that they had discussed it but no definite answer was reached. The witness was then reminded of a deposition taken earlier in the case and then asked if he had been asked the same question during the deposition and he replied that she had told him she thought it came from the other lane of traffic but was not sure. The witness replied that he may have made that answer. No further questions were asked of the witness and objections by the plaintiff that the defendant was impeaching his own witness was overruled.

We do not consider that these questions amounted to impeachment, and even though Mitroka could not impeach a witness called by him, he had a right to appeal to the witness's conscience and refresh his memory, and such procedure was not prejudicial.

The next alleged erroneous impeachment also concerns the witness Robert Vancil during cross-examination by

282

counsel for the defendant, Mitroka, while testifying in the plaintiff's case. Here again the witness was asked whether his wife, the plaintiff, ever made any statement to him as to where the Fletcher car was when she first saw it to which the witness answered, "No sir." The witness was then handed a document marked "Defendant Mitroka's Exhibit No. 3," which was never offered for admission into evidence, and asked if the document refreshed his recollection. After examining it the witness stated he couldn't read the writing of the document but that the signature appearing thereon looked like his own. The witness was then asked again whether his wife ever made the statement to him that the Fletcher vehicle pulled from the inside lane of traffic into the outside lane and just kept coming. The witness answered that she might have. The latter was asked and answered without objection.

■ ■ The plaintiff urges that the foundation for impeachment was laid but no impeachment evidence was ever offered. Such evidence consists of evidence that the witness made a statement on a previous occasion which is inconsistent with his testimony at the trial. Such evidence is permissible to cast doubt on the credibility of the witness. Before such evidence may be introduced, a foundation must be laid consisting of calling the witness's attention to the time, place and persons present when such statement was made or in the case of a written instrument by identifying the signature, Podenkirk v. State Farm Mut. Auto Ins. Co., 325 Ill App 421, 60 NE2d 269 (1945).

■ In the present case, the witness was not asked if he had made a particular statement at a particular time in the past but was handed a document and asked if the document refreshed his recollection. The witness was then asked the same question without objection by the plaintiff. Such procedure is not impeachment by proof of prior

283

inconsistent statement and whatever other objection the plaintiff may have had, she failed to make.

█ In the remaining incidents of alleged erroneous impeachment, the plaintiff alleges that the defendant laid the foundation for impeachment but failed to follow up with proof of the prior inconsistent statement. We have examined the record in each of the incidents and find that the witness did not deny making the previous statement but was equivocal in his answer to the effect that he may have made the previous statement. No proper foundation was laid for the introduction of the prior statement, and as a result it would not have been admissible if offered. In view of the equivocal answers, it was the defendant's option to offer impeaching testimony if they so desired. People v. Bush, 29 Ill2d 367, p 372, 194 NE2d 308, and People v. Preston, 341 Ill 407, 173 NE 383.

██ The plaintiff's allegation that the jury's answers to the special interrogatories and their verdict was against the manifest weight of the evidence may be dealt with summarily. The jury found both of the defendants guilty of negligence, the defendant Mitroka not guilty of willful and wanton misconduct and presumably that the plaintiff was guilty of contributory negligence. There is evidence to support the jury's findings. It is clear from the record in this case that there was evidence of negligent conduct on the part of both defendants. The jury was presented with a question of fact as to whether the defendant Mitroka's conduct amounted to willful and wanton. The question of the plaintiff's contributory negligence will be dealt with in a remaining portion of this opinion. To be against the "manifest weight of the evidence" requires that the opposite conclusion be clearly evident. Hulke v. International Mfg. Co., 14 Ill App2d 5, 142 NE2d 717 (1957). The opposite conclusion is not clearly evident in this case.

█ Turning next to the plaintiff's allegation that the court erred in denying the plaintiff's motion for judg-

ment notwithstanding the verdict as to the defendant Mitroka; the most recent statement of the applicable rule is found in Pedrick v. Peoria and E. R. Co., 37 Ill2d 494, 229 NE2d 504, in which the court stated that judgments n. o. v. ought to be entered only in those cases in which all the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on the evidence could ever stand.

The jury in answer to a special interrogatory found that the defendant Mitroka was not guilty of willful and wanton misconduct as necessitated by the Illinois automobile guest statute. There is no need to completely digest the record in order to determine that the jury had sufficient probative facts upon which to base their verdict. The evidence is undisputed that the defendant Mitroka stopped in response to the traffic signal and slowly made his left turn. There is also evidence that the Fletcher automobile was at least partially concealed by the inside lane of traffic. There is no allegation that the jury was incorrectly instructed. Such a finding of fact was in the province of the jury and the trial court correctly denied the motion.

█ The plaintiff's last assignment of error is that the court erred in denying her post-trial motion for judgment notwithstanding the verdict as to the defendant Fletcher. Besides the general verdict the jury found by special interrogatory that Fletcher was guilty of negligence. It is the plaintiff's theory that since she was a passenger in the Mitroka automobile she could not be guilty of contributory negligence. Before the plaintiff could recover, it was necessary for her to prove that she was in the exercise of ordinary care for her own safety. She was not relieved of that duty because she was riding as a guest passenger in an automobile. Grifenhan v. Chicago Rys. Co., 299 Ill 590, 132 NE 790 (1921); Piper

v. Lamb, 27 Ill App2d 99, 169 NE2d 164 (1960) ; Nowak v. Witt, 14 Ill App2d 482, 144 NE2d 813 (1957).

██ ██ The fact remains that plaintiff saw the approaching Fletcher car, when Mitroka did not, and did not warn her driver. There is a conflict in the evidence as to the speed at which the Fletcher car was approaching, and as to whether it was preceded by a truck in the outside lane of traffic. There is undisputed evidence that plaintiff's driver, Mitroka, did not see it approaching; whether plaintiff knew her driver did not see the approaching car is not shown by the evidence. Plaintiff was only required to exercise such care as the situation may have required, and under no duty as a back seat passenger to supervise the operation of the car in which she was riding. The trial court, who heard and saw the witnesses, obviously concluded that whether under such circumstances plaintiff had a duty to warn and whether her failure to warn contributed to the collision, was a question of fact for the jury. From the evidence the jury could find, and apparently did conclude, that her failure contributed to the collision. Again applying the rule of Pedrick, supra, the court properly refused a judgment n. o. v. on behalf of plaintiff.

For the foregoing reasons the judgment of the trial court is affirmed.

Affirmed.

GOLDENHERSH, J., concurs.

MORAN, J., dissenting:

The majority holding clearly conflicts with the holding of our Supreme Court in Smith v. Bishop, 32 Ill2d 380, 205 NE2d 461, wherein it was determined that "unless the passenger sees an obvious danger which the driver might not see, there would be no duty to warn him." Id. at 384.

The unimpeached testimony of the plaintiff was that although she saw the Fletcher car at a distance of seventy-five feet, she was not expecting a collision. However, the majority says that she must warn the driver of her car about the imminence of a collision that she does not think is going to occur, i. e., when the plaintiff sees something which to her is not an obvious danger, she must nevertheless treat it as an obvious danger and warn of it. The logic of this reasoning escapes me.

The reasonableness of plaintiff's belief that no collision was imminent is substantiated by the fact that the Mitroka car was almost out of the intersection when the collision occurred and that the Fletcher car struck the Mitroka car at its extreme right rear, thus indicating that if another fraction of a second had transpired, the collision would not have occurred.

"One riding in a motor vehicle driven by another has the right to assume that the driver will exercise proper care and caution, until he has notice to the contrary. He is entitled to repose confidence in the driver's operation of the vehicle and to assume that he is alert to other traffic until it becomes apparent to one in the exercise of due care that the driver is inattentive. Acceptance of the driver's manner of operating the vehicle is not ordinarily contributory negligence unless the driver's fault or incompetence is so obvious as to demand effort on the guest's part to abate the danger." 8 Am Jur, § 527, page 84. See also Blashfield, Cyclopedia of Automobile Law and Practice, Vol 4, pages 553–554. The majority, in effect, recognize this principle by saying that the plaintiff was "under no duty as a back seat driver to supervise the operation of the car in which she was riding." However, the result they reach is exactly opposite to the principle they espouse.

Assuming that a duty for her to warn her driver did arise as a result of her observation of the Fletcher automobile, this would still not defeat her recovery, for her

failure to warn could not have been a contributing cause to the accident. "It is well settled that even where a plaintiff may be guilty of negligence he will not, for this reason alone, be prevented from recovering in an action for injuries unless it is also shown that such negligence contributed to the accident." Hagen v. Bailus, 283 Ill App 249 at 251. It is apparent that plaintiff's failure to warn her driver, if it can be termed a failure, could not have been a contributing cause of the accident for there was not sufficient time in which to voice a warning which could have directed her driver as to the appropriate action to take to avoid the impending collision. She testified that she saw the Fletcher car at a distance of seventy-five feet traveling at a speed of forty miles per hour. This would have given her little more than a second to voice a warning which would have prevented the accident. It is beyond the range of possibility that plaintiff could have taken any action in this short time which would have averted the accident. Hence, it cannot be said that her negligence, if indeed there was any negligence on her part, could have been the proximate cause of the accident which resulted in her injuries.

Then, too, even if we assume that the Fletcher car was in obvious danger when plaintiff saw it, I would still see no duty to warn for Mitroka was well into the intersection, making a left turn, when plaintiff saw the Fletcher car. It was then too late to protest, for the danger was already there. It is one thing to warn a driver of a danger unknown to him, and quite another to give direction when danger is already imminent. One may prevent an accident; the other may tend to create an additional hazard.

For the foregoing reasons, I would reverse the judgment of the trial court and order a new trial on damages alone between the plaintiff and the defendant, Fletcher.