(No. 20208.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* WILLIAM EMERLING, Plaintiff in Error.

*Opinion filed October 25, 1930—Rehearing denied Dec. 9, 1930.*

WALTER B. PRENDERGAST, for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, JOHN A. SWANSON, State's Attorney, and JAMES B. SEARCY, (EDWARD E. WILSON, and JOHN HOLMAN, of counsel,) for the People.

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

William Emerling was indicted in the criminal court of Cook county for robbery while armed with a dangerous weapon. A jury found him guilty as charged, judgment was rendered on the verdict and Emerling prosecutes this writ of error for a review of the record.

On February 28, 1929, Anton Zygmuntowicz conducted a place of business for the sale of beverages at 4321 South Marshfield avenue, in the city of Chicago. Zygmuntowicz and his family resided in the rooms to the rear. At about three o'clock in the afternoon of that day, while three customers were present, two men, one of whom was armed with a revolver, entered and ordered a certain beverage. As Zygmuntowicz was about to serve them, they commanded him and his customers to raise their hands. A third man with a sawed-off shot-gun then entered, and struck Frank Dobeck, one of the customers, with his gun. Zygmuntowicz and his three customers were driven into a hallway and

ordered to face the wall. The man who had the shot-gun went to the kitchen, commanded Mrs. Zygmuntowicz to raise her hands, and forced her to enter the hall. In the kitchen and on the way to the hall, she observed his features and heard his voice and later identified the plaintiff in error as the same person. Besides the contents of the cash register, the amount of which was not shown, the robbers took $51 from Dobeck, $3500 from a dresser in a bed-room, and $4500 which had been concealed under the dresser back of some school books. The employees of a packing house in the neighborhood were to be paid their wages on the next day. It was the custom of a number of these employees to cash their checks at Zygmuntowicz's place of business, and he had provided the last two items, aggregating $8000, for that purpose.

The plaintiff in error denied that he participated in the robbery. He testified that he departed from Chicago, aboard a train of the Chicago and Eastern Illinois Railway Company, about midnight, February 27, 1929, accompanied by Edward J. Sheehy, superintendent of the Hamler Boiler and Tank Company, and arrived at St. Louis about eight o'clock the next morning; that he sought employment in East St. Louis by the Hamler company as a boiler maker's helper; that Edward McGuire, the president of the same company, met Sheehy and himself at the Union station in St. Louis; that the three men proceeded to the Labor Temple in East St. Louis where they interviewed William S. Walters, the business agent of the Boiler Makers' Union; that Walters told the plaintiff in error he would not be permitted to work in East St. Louis, and that the latter left St. Louis about 3:30 o'clock in the afternoon of February 28 over the Chicago and Alton railroad and arrived in Chicago late that night.

Edward J. Sheehy corroborated the testimony of the plaintiff in error concerning his trip to St. Louis except that he stated they left Chicago on Friday, February 28; that he

bought a ticket for Emerling's return to Chicago and that the latter departed from St. Louis on a Chicago and Eastern Illinois railroad train about 3:30 o'clock Friday afternoon. Edward McGuire testified that he saw the plaintiff in error at the railroad station in St. Louis about 7:30 o'clock in the morning of February 28, which he said was Friday, and that he accompanied Emerling and Sheehy to East St. Louis. William S. Walters, the business agent of the Boiler Makers' Union, and Herman Kissler, a boiler maker's helper, testified that they met the plaintiff in error, McGuire and Sheehy at the office of the union in the Labor Temple, East St. Louis, on Friday, February 28, 1929. The parties stipulated that February 28, 1929, fell on Thursday and not on Friday.

It is contended that there was no evidence to support the allegation of the indictment that the plaintiff in error was armed with a pistol. The indictment charged that he was "armed with a certain dangerous weapon, to-wit, a certain pistol." A robbery committed by a person armed with a dangerous weapon constitutes the aggravated offense. That offense is also complete if the person committing a robbery has a confederate present so armed to aid and abet him. (Crim. Code, div. 1, sec. 246). The evidence offered by the prosecution showed that the plaintiff in error was armed with a sawed-off shot-gun and that one of his confederates who aided and abetted him, had a revolver. A sawed-off shot-gun or a revolver is *per se* a dangerous weapon. (*People* v. *Dwyer,* 324 Ill. 363). It was not necessary to prove that the plaintiff in error was armed with a pistol. There was evidence that he was armed with a dangerous weapon, and that evidence supported the material allegation of the indictment.

The contention is made that the plaintiff in error was prejudiced by that portion of an answer of one of the prosecution's witnesses on direct examination in which he mentioned the plaintiff in error in association with a certain

person convicted of crime, and again later by an inquiry concerning the same person in a question asked by the assistant State's attorney. A police officer testified that he had seen the plaintiff in error on a certain day, and continued: "We had information that Willie Doody and William Emerling—" Before the officer could proceed, an objection was interposed and sustained. The witness then related how the plaintiff in error had been found in an apartment at 5154 South May street, Chicago. The assistant State's attorney asked, "Did you find Doody there?" An objection was made and the prosecuting attorney promptly interrupted saying: "I mean Emerling; I beg your pardon." Both the statement by the officer and the question by the assistant State's attorney were improper. The former, however, was volunteered and the latter, it appears, was merely an inadvertence. It is extremely improbable that the jury took either into consideration, and the errors certainly were not of a reversible order. *People* v. *Singer,* 288 Ill. 113.

The third instruction, given at the prosecution's request, was as follows: "The court instructs the jury, as a matter of law, that to constitute the offense charged in this case, the intent alleged in the indictment is necessary to be shown, but that direct and positive testimony is not necessary to prove the intent; it may be inferred from the facts and circumstances shown by the evidence." It is contended that the giving of this instruction constitutes reversible error, and *People* v. *McLaughlin,* 337 Ill. 259, is relied upon to support the contention. In that case the charge was assault with intent to rob. There was no direct evidence of such an intent and to establish that material element of the crime charged, its presence would have to be inferred from the facts and circumstances proved. In such a situation the jury might readily understand the instruction to assume the presence of the requisite intent. In the present case no question of intent is involved. It was not required to be charged

or proved. (*People* v. *Hildebrand*, 307 Ill. 544). The third instruction was unnecessary but it was not prejudicial to the plaintiff in error.

The fifth instruction given at the request of the prosecution concerned the subject of reasonable doubt and, in part, stated that the "juror is not allowed to create sources or materials of doubt by resorting to trivial and fanciful suppositions and remote conjectures as to possible states of fact different from that established by the evidence." The complaint made of this instruction is that the jury must have concluded that it was applicable only to the direct evidence relied upon by the plaintiff in error and that, if it was important to caution the jury against trivial doubts, it must have been because the court regarded the identification of the plaintiff in error by Mrs. Zygmuntowicz as sufficient to establish his participation in the robbery. The jury could not reasonably have drawn any such inferences from the instruction. An instruction containing the language quoted was approved in *Watt* v. *People*, 126 Ill. 9, p. 30, but in *People* v. *Seff*, 296 id. 120, where three similar instructions were given, this court said that they emphasized the probable danger that the jury might regard something as a reasonable doubt, which was not reasonable, and further that the giving of such instructions had been repeatedly disapproved although the court had not reversed a judgment solely on that account.

The sixth instruction, also given at the prosecution's request, informed the jury that in judging the credibility of the witnesses in the case, they should carefully scrutinize the testimony given, and in doing so consider all the circumstances under which any witness testified, enumerating, among others, "the relations which he bears to the State or to the defendant." The objection urged to the instruction is that it omitted to state that the relations of a witness to a party should have no effect upon his credibility in the absence of any evidence showing partiality. When

shown by the evidence, such relations, however they arise, whether by blood, marriage, friendship, employment or other fact or circumstance, should be taken into consideration by the jury in determining the witness' credibility. The criticism made upon the instruction is baseless.

It is argued that the evidence is insufficient to sustain the conviction of the plaintiff in error. He was positively identified by Mrs. Zygmuntowicz as the man who entered her kitchen, commanded her to raise her hands and forced her to go into the hall. She observed his features and heard him speak. The plaintiff in error sought to show that he was in St. Louis, Missouri, at the time the robbery was committed. There are serious discrepancies, however, in the testimony by which he endeavored to establish an alibi. The effect of that testimony, taken as a whole, is that he was in St. Louis on Friday, the day after, and not on, the day the crime was committed. His return to Chicago, according to the witnesses who testified concerning it, was made over two competing railroads. The law has committed to the jury the determination of the credibility of the witnesses and of the weight to be given to their testimony, and where the evidence is conflicting this court will not substitute its judgment for that of the jury. There was sufficient evidence in this case to convict and it cannot be said that the verdict is palpably contrary to the weight of the evidence or that it is so unreasonable, improbable or unsatisfactory as to justify a reversal of the judgment on that ground. *People* v. *Flanagan,* 338 Ill. 353; *People* v. *Romano,* 337 id. 300; *People* v. *Kessler,* 333 id. 451; *People* v. *Hoffman,* 329 id. 278; *People* v. *Elmore,* 318 id. 276.

The judgment of the criminal court is affirmed.

*Judgment affirmed.*