People of the State of Illinois, Plaintiff-Appellee, v. Willie Whitehead and Richard E. Hudson, Defendants-Appellants.

Gen. No. 50,447.

First District, Second Division.

February 15, 1966.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Marshall J. Hartman and James J. Doherty, Assistant Public Defenders, of counsel), for appellants.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and E. Roger Horsky, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE BRYANT delivered the opinion of the court.

This is an appeal from a finding of guilty of the crime of robbery made July 15, 1964, following a trial without jury in the Circuit Court of Cook County, Criminal Division. Judgment was entered on the finding the same day, the appellant Whitehead being sentenced to 1 to 3 years in the Illinois State Penitentiary, and appellant Hudson being sentenced to 2 to 7 years. The appellants' theory on this appeal is that they were not proven guilty beyond a reasonable doubt and that they did not receive a fair trial.

The trial brought forth the following evidence. Emma Williams, the complaining witness, testified that on May 8, 1964 she was walking along Greenwood Avenue between 62nd and 63rd Streets when she heard people using profanity behind her. She turned around to see who was swearing and saw the two appellants. Although it was after 11:00 p. m., she said she could see the two men

clearly because of the street lights and the large number of neon signs along the street. She then turned away from the men and continued walking along Greenwood Avenue, but was grabbed from behind, thrown to the ground and robbed of her purse and watch. While she did not see the man actually grab her, she saw them as they were running down the street after having attacked her. She says they were the same two men she saw behind her when she turned around. She said the appellant Whitehead was wearing a beige leather jacket and the appellant Hudson, a red and black jacket. While she apparently did not see the faces of her assailants as they attacked her or as they fled, she said she was sure it was the same two men she saw walking behind her for there was no one else near her at that time and because she recognized their clothing.

Mrs. Williams said that she then went home and had her son call the police. Apparently this witness then went out with the police to try to find the stolen property and the assailants. After a while the police brought these two appellants to her, but she did not then identify them as the ones who robbed her. She testified that she did not identify them because she was afraid, and claims someone in the crowd said that if she identified these two men she would be attacked.

The next day, May 9, 1964, having discussed the matter with her husband, Mrs. Williams went to the police and said that the two men they had brought before her were the men who robbed her. On May 10, 1964, she picked the two men out of a lineup of seven persons. On cross-examination she testified that she never told the police that she could not give a description of the men who robbed her.

James Daniher, one of the policemen called to the scene, testified that when the two appellants were brought to Mrs. Williams that night, she seemed very nervous. He said that he heard the crowd talking when the two

490

men were brought over, but that he heard no threats against Mrs. Williams. He stated he did not listen to what the crowd was saying. He stated he did not find any of the stolen property on the appellants' persons when he searched them.

Mrs. Norma Whitfield testified that she was driving down Greenwood Avenue at the time of the robbery. She said she saw the appellants bending over Mrs. Williams and then run away. She knew the appellants on sight because they visited Maurice Washington, a tenant in the building where she lived. She was the manager of this building. She said that one of the two ran down the street after the robbery while the other ran down a gangway between two buildings. As she was parking her car, she saw the appellant Whitehead come in the back entrance of the building. She did not see the appellant Hudson come into the building, but she testified that she saw both leave the building again about one-half hour after the robbery had been committed. She said that Whitehead was wearing a black and red jacket while Hudson was wearing a beige one. The victim, Mrs. Williams, testified that when she first saw the two, Whitehead had the beige leather jacket while Hudson wore one that was black and red. She said, however, that when the two were brought before her that night, they had exchanged jackets.

Mrs. Whitfield said she saw the men clearly because of the street lights and the neon signs in the neighborhood. She then testified that she went out into the street and told one of the policemen that she knew who had robbed Mrs. Williams. She showed him the neighborhood coffee shop to which the appellants had gone and they were then taken into custody by the police.

Officer Daniher was the policeman who arrested the appellants. He said that when he took them into custody, Hudson was wearing a beige jacket, and Whitehead was wearing a red and black one.

491

Officer Hubert Holton testified that he was on duty the day after the robbery and that Mrs. Williams told him that it was the appellants who committed the crime. He arrested these two men at the building Mrs. Whitfield managed. According to this witness, Mrs. Williams identified the appellants at a line-up held the next day.

John Hearn Jr., age 22, testified that he was across the street when the robbery occurred and saw the men who robbed Mrs. Williams. He testified he did·not know who they were, but said that the appellants were not the ones. Mrs. Joyce Jordan was with Hearn at this time and corroborated his testimony.

Maurice Washington, Jr. testified that he was with the appellants from 9:00 p. m. to 1:00 a. m. the night of the robbery. He said that the only time they left his presence during that evening was when his father sent them to the corner to get him some soup. It was while they were on this errand that they were arrested.

Both appellants took the stand in their own defense at the trial and in effect denied all knowledge of the robbery.

 We believe that there is sufficient competent evidence to support the finding that these appellants were the men who committed the robbery. There is nothing in the evidence which shows that Mrs. Williams and Mrs. Whitfield could not have seen the appellants. There was evidence from all the witnesses who were asked that the street was well lighted. The sole question for resolution is the credibility of the various witnesses. The two witnesses who said they saw the robbery and testified that the appellants were not the ones were across the street while the offense was taking place. Mrs. Williams was certainly in a better position to see the two men. While Mrs. Whitfield was in a car when she saw the robbery, she knew the two men and was in a good position to identify them. She testified that there were no automobiles blocking her vision when she watched

the men flee the scene of the crime. Being in the middle of the street, she was still in a better position to see the assailants than were the two witnesses who were across the street. The Court below heard and saw the witnesses and we cannot say that his finding was against the manifest weight of the evidence. "Where the cause is tried without a jury, it is the function of the trial court to determine the credibility of the witnesses and the weight to be afforded their testimony, and where the evidence is merely conflicting a reviewing court will not substitute its judgment for that of the trier of fact." People v. Clark, 30 Ill2d 216, 219, 195 NE2d 631, 633 (1964).

██ The first point made to substantiate the appellants' claim that they did not receive a fair trial is that their attorney was not shown the police reports prior to the trial. Such a claim is without legal basis. In support of their proposition, the appellants cite the cases of People v. Moses, 11 Ill2d 84, 142 NE2d 1 (1957) and People v. Neiman, 30 Ill2d 393, 197 NE2d 8 (1964). In the Moses case, supra, the police department records were sought after a witness had testified so that the witness might be impeached. In People v. Neiman, supra, the court held that the police must show their records to the defendant when such records might be used for impeachment purposes. Both cases hold that the police department records are available only for impeachment purposes. See also People v. Turner, 29 Ill2d 379, 194 NE2d 349 (1963); People v. Cole, 30 Ill2d 375, 196 NE2d 691 (1964); People v. Johnson, 31 Ill2d 602, 203 NE2d 399 (1964); People v. Bailey, 56 Ill App2d 261, 205 NE2d 756 (1965).

The next point made by the appellants is that their attorney was prevented from introducing prior inconsistent statements allegedly made by Mrs. Williams before the grand jury. On cross-examination he asked Mrs. Williams if she had told the grand jury that she did not

see the men who robbed her. She answered, "No, I didn't make that statement." The matter was pursued no further at that point.

When appellant Hudson took the stand he was asked if Mrs. Williams had testified against him before. He answered that she had. He also testified that he was present at that time. He was then asked, "Now did they ever ask her and did she answer—" The question was interrupted by an objection.

 A prior inconsistent statement is not considered hearsay, since it is not admitted to prove the truth of the matter asserted, but only to show that the witness made inconsistent statements. III Wigmore, Evidence § 1018 (3rd Ed, 1940, p 687–690). The question here is not whether prior inconsistent statements may be proven, but the manner in which such proof may be made. Appellants cite People v. Goldberg, 302 Ill 559, 135 NE 84 (1922), for the proposition that the former evidence of a witness may be established by any person who heard the testimony given and can swear to it from memory. In the Goldberg case, supra, the court was faced with the claim that a witness could not be impeached with his testimony given at a grand jury on the grounds that the grand jury proceedings were secret and that it was against public policy to permit the records to be made public. There, the court said that the witness could be impeached by bringing in the stenographer who took the record of the testimony given before the grand jury. Miller v. People, 216 Ill 309, 74 NE 743 (1905), is cited for the same proposition. There too, the court said that prior testimony could be proved by a court reporter.

The case closest on its facts to the one at bar is People v. Colon, 119 NYS2d 503, 281 App Div 354 (1953), where the court said it was proper for the attorney who represented the defendant at the preliminary hearing to testify as to what was said by one of the witnesses on that occasion.

494

■ We need not pass on whether this result is necessary, for the post trial motion is inadequate to raise the issue. After the finding of guilty, attorney for the defendants made oral motions for a new trial and in arrest of judgment. In neither case did he specify any basis for the motion. Assuming that the filing of a written post trial motion may be waived, the record does not show the submission of an oral post trial motion raising these questions.

■ The final point raised on the appeal is that the appellants were prevented from showing that Mrs. Whitfield bore a grudge against Maurice Washington. People v. Bote, 376 Ill 264, 33 NE2d 449 (1941), is cited in support of this proposition. In that case, however, the court held it was error not to permit the appellant to show that the witness was prejudiced against *him*. We have been shown no cases where the dislike of witnesses for one another was considered proper for exploration during a trial. We think that the feelings of Mrs. Whitfield toward Mr. Washington are too tangential to be admissible as evidence at this trial.

For the reasons given above, the judgment is affirmed.

Judgment affirmed.

LYONS and BURKE, JJ., concur.