THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
DARREL W. MULLINAX, Defendant-Appellant.

Fourth District    No. 15056

Opinion filed January 18, 1979.—Rehearing denied February 14, 1979.

Asher O. Geisler, of Decatur, for appellant.

Patrick M. Walsh, State's Attorney, of Decatur (Richard A. Current, Assistant State's Attorney, of counsel), for the People.

Mr. PRESIDING JUSTICE REARDON delivered the opinion of the court:

The defendant, Darrel W. Mullinax, was charged on August 17, 1977, with three counts of attempted murder in violation of section 8—4 of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 8—4), one count of arson in violation of section 20—1 of the Code (Ill. Rev. Stat. 1975, ch. 38, par. 20—1), and one count of assault in violation of section 12—1 of the

Code (Ill. Rev. Stat. 1975, ch. 38, par. 12—1). Following a jury trial, defendant was found guilty on two counts of attempted murder (with respect to his wife and infant son) and one count of arson. Defendant appeals his convictions, alleging numerous errors.

At defendant's trial, his wife, Lucy Mullinax, testified that on August 16, 1977, she and her 5-week-old son were at the home of Judy Kaiser in Decatur, Illinois. She had previously had an argument with the defendant and had come to Kaiser's to spend the night. Mullinax testified that, during the early morning of the 16th, she received a telephone call from the defendant who asked her if she was coming home. When Mullinax responded negatively to this inquiry, the defendant told her, "Well, you and Brandon have got forty-eight hours to live." Defendant then hung up, but Mullinax called him back and he again repeated that she and their son had 48 hours to live.

Approximately 20 minutes after this telephone conversation, the defendant's wife observed him outside Kaiser's home opening the trunk of her (Mullinax's) car which was parked next to the house. After calling the police, Kaiser observed that Mullinax's car was on fire. The police arrived shortly thereafter and helped Mullinax, her son, and Kaiser from the house.

People's witness Judy Kaiser corroborated Mullinax's version of the occurrence. However, Kaiser did not actually see the defendant outside her home, or see him set fire to the car. Various police officers who were dispatched to the scene also testified for the State. The flames from the automobile, which was estimated to be within 2½ to 3 feet of the house, were described as extensive. Although Kaiser had testified that there was some damage to the house as a result of the fire, the police and firemen at the scene did not observe such. The victims, however, as they evacuated the house were within 2 or 3 feet of the flames.

Defense witness Douglas York testified that he saw the defendant in his tavern during the early morning hours of August 16. The defendant appeared to York to be intoxicated.

Defendant testified, on his own behalf, that on the night in question he went to Kaiser's house, where his wife's car was parked, to get a "C.B." radio out of the trunk of her car. There was no light in the trunk so he lit a match to look for the radio. When he did so, the car burst into flames. Defendant's wife had previously testified that she generally kept a can of gas in the trunk of her car and there was a gas can in the trunk on the night in question. After the trunk had ignited, the defendant slammed the trunk lid and left immediately.

On cross-examination, defendant admitted that he was not burned or scorched when the car caught fire. He denied both that he had placed the

can of gasoline in the trunk of the car and that he had deliberately set fire to the car. He also testified that he had no knowledge that his wife and son were in the rooms adjacent to where the car was parked.

On rebuttal, the State called the Decatur fire marshall, William Turner, who had previously testified for the defendant. Turner stated that the defendant would have sustained burns from the resulting explosion when the fumes ignited, if he had been standing over the trunk at the time, as he had previously testified.

Following the defendant's convictions, and on June 15, 1978, the court imposed concurrent sentences as follows: 3 to 9 years for arson; 3 to 9 years for the attempted murder of Brandon Mullinax; and 3 to 9 years for the attempted murder of Lucy Mullinax.

■■ The defendant initially challenges his convictions arguing that the court improperly allowed into evidence the ·telephone conversation between him and his wife, wherein he allegedly told her that she and their son had 48 hours to live. Defendant contends that because this conversation was confidential it was, therefore, privileged and not admissible. The defendant's reliance on the provision of the Criminal Code that a spouse may not testify as to any confidential communication or admission made by the other is, however, entirely without merit. Ill. Rev. Stat. 1975, ch. 38, par. 155—1.

This section provides an explicit exception to the privileged communications between husband and wife "in cases where either is charged with an offense against the person or property of the other * * *." (Ill. Rev. Stat. 1975, ch. 38, par. 155—1.) The defendant, having been charged with the assault and attempted murder of his wife and the arson of her automobile, cannot seriously contend that this threatening communication, which is relevant to those charges, is privileged.

Defendant next alleges that error occurred when the State attempted to impeach defense witness Douglas York, by showing a prior inconsistent statement and, thereafter, offering no evidence of the inconsistent statement. When questioning York about certain statements the defendant supposedly made to him, the State asked:

"Q: Isn't it true that he [defendant] was going to take a shotgun and blow her away?

A: No, I think he said he was going to shoot her."

■■ We agree with defendant that once a foundation for impeachment by prior inconsistent statements has been laid, it is necessary for counsel to offer proof of the alleged impeaching statement. (*People v. Williams* (1969), 105 Ill. App. 2d 25, 34, 245 N.E.2d 17.) The question by the State, however, does not appear to have been an attempt to impeach the witness by means of a prior inconsistent statement. The State did not attempt to

convey to the jury the witness' lack of credibility by further questioning about a time and place when he made a contrary statement. The State merely posed a question and accepted the witness' response.

Alternatively, we note that the substance of the State's question and York's response was essentially the same. Failure by the cross-examiner to offer proof of an alleged impeaching statement will not constitute error if there is only a slight inconsistency between the two statements. *Schoolfield v. Witkowski* (1964), 54 Ill. App. 2d 111, 126, 203 N.E.2d 460.

Defendant also maintains that defense cross-examination of the State's witness Kaiser, to show her bias or prejudice against him, was improperly limited by the trial court. Defendant urges that Kaiser's bias was demonstrated by her statement, made during an offer of proof, that she didn't feel that Lucy Mullinax was properly pursuing the prosecution of the defendant because she was not doing everything she could to see that the defendant was convicted.

The bias of a witness toward a party is always pertinent to the question of his or her credibility. (*People v. Emerling* (1930), 341 Ill. 424, 173 N.E. 474.) A witness' interest in the outcome of a case, or hostility toward the defendant, are relevant to a showing of bias or interest, because such feelings of hostility may well influence the manner in which the witness testifies. *People v. Henson* (1975), 32 Ill. App. 3d 717, 336 N.E.2d 264.

■■ Although the offer of proof did demonstrate some ill feeling by Kaiser toward another witness (Lucy Mullinax), which as the State contends would be irrelevant (*People v. Whitehead* (1966), 68 Ill. App. 2d 488, 216 N.E.2d 237), it also exhibited a degree of hostility toward the defendant and her interest in his conviction. In view of the wide latitude which should be allowed the defendant in cross-examination for the purpose of establishing bias (*People v. Nester* (1976), 40 Ill. App. 3d 735, 738, 353 N.E.2d 23), the court should have allowed inquiry into this matter. Nevertheless, any error would be deemed harmless unless manifest prejudice was shown to have resulted from the limitation of cross-examination. (See *People v. Nugara* (1968), 39 Ill. 2d 482, 236 N.E.2d 693, *cert. denied* (1968), 393 U.S. 925, 21 L. Ed. 2d 261, 89 S. Ct. 257.) In testifying, Kaiser admitted that she neither saw defendant at the car, nor saw him light the fire. Although her testimony, in part, corroborated Lucy Mullinax's, it was not critical to the State's case and any error was, therefore, harmless. See *Nester*.

The defendant next challenges the trial court's denial of his motion for a directed verdict and, alternatively, a mistrial arguing that there was a fatal variance between the allegations in the separate counts of the information and the proof presented. The defendant emphasizes that the information alleged that he placed the can of gasoline in the vehicle, while

his wife admitted, during her testimony, that the can was already in the car. Further, in one of the counts of attempted murder, it was charged that the vehicle, at the time it was set afire, was partially obstructing the free access from Kaiser's home. Mullinax admitted that she, together with her son and Kaiser had exited the house without injury.

■■ Defendant contends, in essence, that the means or mode of committing the offense as charged in the information were not proved. It is only where the means used are integral parts of the offense that they need be averred. (*People v. Coleman* (1971), 49 Ill. 2d 565, 571, 276 N.E.2d 721 (the court cited as an example the crime of assault with a deadly weapon).) The particular details of the means used are not part of the nature and elements of the offense of attempted murder. *People v. Drink* (1967), 85 Ill. App. 2d 202, 207-08, 229 N.E.2d 409.

■■ In view of the principles set forth in *Coleman* and *Drink*, we conclude that the allegations of the information, with respect to the precise manner in which the defendant took a substantial step towards the commission of the crime, were *surplusage*. Thus, any variance between those particular allegations and the proof would not have been prejudicial to the defendant. See *People v. Williams* (1963), 28 Ill. 2d 280, 285, 192 N.E.2d 356 (variance between indictment and proof with respect to the nature of deceased's wounds treated as surplusage); see also Ill. Rev. Stat. 1975, ch. 38, par. 111—5.

Defendant further asserts that the jury returned inconsistent verdicts as to the charges of attempted murder. He specifically argues that the verdicts finding him guilty of attempted murder of his son while finding him not guilty of the same charge as to Kaiser cannot be supported since the facts and evidence applicable to both victims were identical. Where verdicts inconsistently acquit and convict a defendant of separate crimes arising from the same act, logical consistency is not necessary, so long as the verdicts are not legally inconsistent. (*People v. Hairston* (1970), 46 Ill. 2d 348, 361-62, 263 N.E.2d 840, *cert. denied* (1971), 402 U.S. 972, 29 L. Ed. 2d 136, 91 S. Ct. 1658.) There is no legal inconsistency where the crimes charged, although arising out of the same conduct, are composed of different elements. *Hairston.*

■ Here, the two offenses charged are the same, but the elements required to be proved with respect to the two charges are distinct, *i.e.*, the requisite specific intent to kill as to each victim. Thus, while the jury could logically conclude that the defendant had the specific intent to kill his son, it could at the same time determine that he did not have a similar intent as to Kaiser.

Defendant next urges that reversible error occurred when the trial court refused defendant's modified versions of the Illinois Pattern Jury Instructions, Criminal (hereinafter cited as IPI Criminal). Defendant

included in his proposed instructions a charge that the State was required to prove the precise manner in which the defendant took a substantial step towards the commission of the crime, as alleged in the information.

The court instructed the jury using IPI Criminal Nos. 6.05 and 6.07, which defined the crime of attempted murder and the elements of attempt which the State was required to prove. The jury was further instructed that a person commits murder by causing the death of another with the intent to kill that person. These instructions conformed to the requirements set forth in *People v. Trinkle* (1977), 68 Ill. 2d 198, 369 N.E.2d 888, by properly defining the murder attempted and requiring the jury to find that the defendant acted with the specific mental state of intent to kill. See also *People v. Roberts* (1978), 56 Ill. App. 3d 667, 372 N.E.2d 143, *rev'd on other grounds* (1979), ___ Ill. 2d ___, ___ N.E.2d ___.

Supreme Court Rule 451(a) provides that where the IPI Criminal instructions are on point and accurately state the law they should be given rather than alternative instructions drafted by counsel. (58 Ill. 2d R. 451(a).) As we noted above, the IPI Criminal instructions given accurately described the law and defined the elements of the crime. *Trinkle.*

■ In addition, although a trial judge has a duty to instruct the jury as to the elements of the offense (*People v. Malone* (1976), 37 Ill. App. 3d 185, 345 N.E.2d 801), the particular means used by the defendant are not part of the elements of the offense of attempted murder. (*Drink.*) Aside from the recitation of details contained in the information, which we have concluded were mere surplusage, defendant's tendered instructions were simply repetitions of the material elements set forth in the State's instructions. They were, therefore, properly refused. *People v. Hughes* (1977), 46 Ill. App. 3d 490, 360 N.E.2d 1363.

■ Finally, with respect to the instructions, defendant alleges that it was error to omit the names of the victims from the instructions on attempted murder. The jury was required, however, to make specific findings as to each named victim. In any event, the name of the victim is not an element of the offense and does not have to be included in the instructions. *Malone.*

Concerning the merits of the State's case, defendant argues that the evidence was insufficient to prove his guilt of attempted murder. Defendant first contends that the evidence failed to establish that he took a substantial step towards the commission of the offense of murder. He argues that the State's theory, that he set fire to the car parked next to the house, with the hope that the car would explode, set fire to the house, and kill the occupants therein, is preposterous. The essence of this argument, however, focuses on the slight probability that the act of setting fire to the car, even if done intentionally, could have caused the death of the occupants of the house.

■ The jury, however, was properly instructed, as mandated by *Trinkle,*

that the defendant must have acted with intent to kill. Thus, if the jury was satisfied that the defendant's act of setting the car on fire was committed with the specific intent of murdering certain victims, it would be of no consequence that the plan was ill-conceived, or that the act could never have caused his intended victims' deaths. See Ill. Rev. Stat. 1975, ch. 38, par. 8—4(b) (impossibility is not a defense to the crime of attempt); see also LaFave and Scott, Criminal Law §60, at 441 (1972).

■■ Defendant also asserts, however, that his intent to kill was not sufficiently proven. Defendant argues that even if the jury found that he had intentionally set fire to the car, the circumstances surrounding that act insufficiently demonstrate an intent to take a life. The jury here, however, had more than the defendant's mere act from which to infer his intent. The phone conversation which occurred only a short time before the arson, wherein the defendant allegedly threatened his wife and son, provided sufficient evidence for the jury to conclude that defendant had the requisite intent to kill. *People v. Koshiol* (1970), 45 Ill. 2d 573, 262 N.E.2d 446, *cert. denied* (1971), 401 U.S. 978, 28 L. Ed. 2d 329, 91 S. Ct. 1209.

Defendant also maintains, however, that since the jury was instructed by the trial court to disregard the threatening telephone conversation with respect to Kaiser and the defendant's son, Brandon, the evidence was insufficient to prove beyond a reasonable doubt his intent to murder his son. Basically, the defendant contends that, if the jury responded to the court's direction and did not consider as evidence the defendant's previous threat against his son, the only evidence remaining indicative of his intent as to the son would be the setting fire of the automobile, which was adjacent to the house. Defendant then reasons that, as in *People v. Trinkle* (1976), 40 Ill. App. 3d 730, 734, 353 N.E.2d 18, *aff'd* (1977), 68 Ill. 2d 198, 369 N.E.2d 888, this is hardly a substantial base from which to infer an intent to take life.

■■ A reasoned response to the contention seems to be that, as to Brandon Mullinax, we find no basis for the trial court's limiting instruction regarding the threatening telephone call. The husband and wife privilege concerning confidential communications, as we stated previously, does not apply where one spouse is charged with an offense against the other. There is similarly no privilege "where the interests of their child or children are directly involved * * *." (Ill. Rev. Stat. 1975, ch. 38, par. 155—1.) Inasmuch as the defendant was charged with the attempted murder of his son, we cannot perceive of a situation where the interest of the child would be more directly involved.

■■ The defendant argues that the evidence with respect to Kaiser and his son, aside from the threatening telephone conversation, was identical. From this, defendant concludes that since he was found not guilty with

respect to Kaiser, the jury must have considered the threatening conversation as to his son despite the court's admonition not to do so. It is our conclusion that the trial court erred in restricting the jury's consideration of that conversation as it applied to Brandon Mullinax. This error was occasioned by defendant. Consequently, if in fact the jury, in finding the defendant guilty of the attempted murder of his son, gave any consideration to that telephone call the prejudice to the defendant is imperceptible. The defendant by instituting the error cannot be heard to magnify that error to his own advantage. We find no grounds warranting the reversal of the defendant's conviction.

Finally, defendant maintains that he was improperly sentenced for his convictions of attempted murder. Relying on *People v. Moore* (1978), 69 Ill. 2d 520, 372 N.E.2d 666, he asserts error resulted because the counts of the information charging him with attempted murder described the offense as a Class 1 felony. *Moore* held that attempted murder is not a Class 1 felony and that section 8—4(c)(1) of the Criminal Code (Ill. Rev. Stat. 1975, ch. 38, par. 8—4(c)(1)) refers only to the maximum sentence that may be imposed for the crime, *i.e.*, not to exceed the sentence for a Class 1 felony.

However, the reversible error which occurred in *Moore* and in *People v. Athey* (1976), 43 Ill. App. 3d 261, 356 N.E.2d 1332, was the trial court's mistaken belief that section 8—4(c)(1) mandated a *minimum* sentence of 4 years for attempted murder. It is evident that the trial court here, by imposing a minimum sentence of 3 years, was not acting under a similar mistaken notion.

Defendant, in addition, argues that since the crime of attempt is not designated as any particular classification of felony, it must be a Class 4 felony. (Ill. Rev. Stat. 1975, ch. 38, par. 1005—5—2(a).) Defendant concludes, therefore, that the maximum term of imprisonment for conviction of attempted murder should be 1 to 3 years. Ill. Rev. Stat. 1975, ch. 38, par. 1005—8—1(b)(5).

This construction of the statute is completely at odds with the express language of section 8—4(c)(1) that the sentence for attempted murder should not exceed the sentence for a Class 1 felony. "[F]or a Class 1 felony, the maximum term shall be *any term in excess of 4 years.*" (Emphasis added.) (Ill. Rev. Stat. 1975, ch. 38, par. 1005—8—1(b)(2).) There is no question that the defendant's maximum sentence of 9 years is proper.

For the reasons stated above, we conclude that the judgment of the trial court should be affirmed.

Affirmed.

MILLS and TRAPP, JJ., concur.