PHILLIP J. GILLESPIE, Plaintiff-Appellee, v. CHRYSLER MOTORS CORPORATION, Defendant-Appellant.

Fifth District   No. 5—87—0647

Opinion filed December 2, 1988.

6

WELCH, J., dissenting.

Joseph B. McGlynn, Jr., and John D. Wendler, both of McGlynn & McGlynn, of Belleville, and Robert L. Stern, John C. Berghoff, Jr., and Kevin C. Aiston, all of Mayer, Brown & Platt, of Chicago, for appellant.

Cook, Shevlin, Keefe & Ysursa, of Belleville (Bruce N. Cook, of counsel), for appellee.

JUSTICE CALVO delivered the opinion of the court:

While servicing a United Parcel Service (UPS) van, Phillip J. Gillespie, a mechanic for UPS, injured his back when the hood of the van dropped on his back. Gillespie sued Chrysler Motors Corporation alleging that Chrysler supplied UPS with a defective hood hinge which broke and caused the hood to fall on Gillespie, resulting in his back injuries. The parties tried the case for three weeks before a jury. At the close of all of the evidence, the court directed a verdict in Gillespie's favor, finding that the hinge was unreasonably dangerous. The case was submitted to the jury on the issue of proximate cause. The jury returned a verdict in Chrysler's favor. The trial court, however, granted Gillespie's post-trial motion for a new trial on the ground that Chrysler committed prejudicial error by improperly impeaching Gillespie with a prior statement he made to a nurse, and by repeating the prior statement during its opening statement and closing argument. Chrysler appeals the trial court's order for a new trial. We affirm.

■ A trial court's decision on a motion for a new trial will not be overturned unless the court abused its discretion. (*Ramseyer v. Illinois Central R.R. Co.* (1969), 110 Ill. App. 2d 95, 96, 249 N.E.2d 120, 120.) The sole issue on appeal is whether the trial court had a sufficient basis for ordering a new trial. Although both parties discuss other alleged errors committed during the trial, we are only concerned with the one error on which the trial court based its decision.

The trial court found that Chrysler improperly attempted to impeach Gillespie with a prior statement he made to a nurse. The nurse wrote the statement in Gillespie's medical records. The record reveals that Gillespie suffered a severe low back strain a few weeks prior to

the accident. Gillespie was hospitalized and absent from work as a result of the strain. On March 7, 1981, just two days prior to the accident, Gillespie went to the office of Dr. John Jemsek, his treating physician, for a follow-up examination. On that day Jemsek's nurse, Karen O'Dell, wrote the following note in Gillespie's medical records: "When [Gillespie] gets up in truck he has to get on knees and pull himself up." During Gillespie's evidence deposition, Chrysler asked him:

"Q. Okay. And do you remember telling anybody on March 7th that when you get up in the truck that you have to get up on your knees and pull yourself up?

A. Not that I recall.

* * *

Q. Okay. You are not denying that you said it?

A. I don't remember having that condition at that time. I will put it like that."

The court found that Chrysler improperly tried to impeach Gillespie because Chrysler failed to call O'Dell to testify to authenticate the statement in her note.

■ The trial court not only held that Chrysler improperly attempted to impeach Gillespie because Chrysler never submitted proof of the impeaching statement, but further held that this error was prejudicial to Gillespie. The court pointed out that Gillespie was the only witness who testified that the accident occurred. Thus, his credibility was a crucial issue in the trial, and the attempted impeachment necessarily affected his credibility. The court also noted that Chrysler compounded the prejudicial effect by referring to the statement in its opening statement and closing argument. We agree with the trial court that Chrysler improperly attempted to impeach Gillespie with the nurse's note, and that that action, together with Chrysler's other references to the note during the trial, had a prejudicial effect on Gillespie.

Chrysler initially argues that Gillespie failed to object at trial to its references to the note and therefore he waived his right to challenge the issue on appeal. Chrysler also points out that "when offering counsel fails to supply the connection needed to make evidence admissible, the burden is on objecting counsel to renew his objection by requesting that all the evidence dependent upon the connecting proof be stricken, or the point is waived." (*Kloster v. Markiewicz* (1981), 94 Ill. App. 3d 392, 393, 418 N.E.2d 986, 987.) Chrysler additionally cites *Bullard v. Barnes* (1983), 112 Ill. App. 3d 384, 392, 445 N.E.2d 485, 492, *aff'd* (1984), 102 Ill. 2d 505, 468 N.E.2d 1228, for the proposition

that a party cannot assign error to the admission of evidence if that same evidence is admitted without objection at some other time during the trial.

The record reveals that Gillespie did not object when Chrysler referred to the note in its opening statement. Gillespie did not object during the deposition of Dr. Gaylin Lack, Gillespie's other treating physician, to Chrysler's question regarding the note; the question and Lack's response were read to the jury. Gillespie also failed to object to the questions about the note during his own evidence deposition. Gillespie did object to similar questions asked of Jemsek during Jemsek's evidence deposition; the court sustained the objections and the questions and answers were not read to the jury. Gillespie, however, later withdrew one of the objections he made during Jemsek's deposition, so one question and answer concerning the note were read to the jury. Gillespie also objected to Chrysler's reference to the note during Chrysler's closing argument, and the court sustained the objection.

█ Although a party must object to an error during trial in order to preserve it for review, a court may, "where necessary to ensure a fair trial and protect the judicial process from deterioration, consider[] errors where no objection was made in the trial court." (*Underwood v. Pennsylvania R.R. Co.* (1966), 34 Ill. 2d 367, 371, 215 N.E.2d 236, 239.) Consequently, in order to ensure a fair trial, we find it necessary to review the alleged error. As we will discuss later, the references to the note severely prejudiced Gillespie's case. We acknowledge that Gillespie failed to object to *every* question Chrysler asked concerning the note. Gillespie, however, did not completely overlook the error. During the pretrial conference on Jemsek's deposition, Gillespie objected to Chrysler's questions regarding the note on hearsay grounds. Chrysler informed the court that it intended to call the nurse to testify to prove up the statement and asked the court to admit the testimony on the condition that Chrysler call the nurse to testify. The court refused Chrysler's request and sustained the objection on hearsay grounds. Chrysler never called the nurse to testify. Thus, although Gillespie failed to renew his objection each time Chrysler raised the issue of the note, Chrysler was not unaware that it had to submit the nurse's testimony in order to properly admit any evidence concerning the note.

Chrysler draws our attention to *Sprague v. Commonwealth Edison Co.* (1978), 59 Ill. App. 3d 342, 375 N.E.2d 493. In *Sprague*, the defendant asked a witness whether he remembered making a certain prior statement, and the witness replied that he did not remember. The defendant, however, never presented proof that the witness had

in fact made the prior statement. The court held that plaintiff failed to preserve the issue for appellate review because plaintiff did not object at trial to defendant's alleged improper impeachment of the witness. (*Sprague*, 59 Ill. App. 3d at 350, 375 N.E.2d at 500.) The court, however, also held that defendant did not impeach the witness because the witness' prior statement and the witness' testimony were the same; thus, plaintiff was not prejudiced by the testimony. (*Sprague*, 59 Ill. App. 3d at 350-52, 375 N.E.2d at 500-01.) Gillespie's prior statement and testimony were not the same, and as we noted earlier, we believe Gillespie was prejudiced by the references to the note. Consequently, *Sprague* is distinguishable.

Chrysler's second argument is that it did not intend to impeach Gillespie by cross-examining him on the note. Chrysler asserts that Gillespie previously admitted that he had a prior injury, so Chrysler believed that Gillespie would likewise admit the facts contained in the note. Even if it had intended to impeach Gillespie, Chrysler contends that Gillespie's testimony had no significant impeaching effect. Chrysler, therefore, asserts that it had no duty to submit proof of the prior statement.

■ Contrary to Chrysler's assertions, we believe it was attempting to impeach Gillespie. The important medical evidence was the *extent* of Gillespie's back problems just prior to the accident, not merely whether Gillespie had a prior injury. Gillespie was the only eyewitness to the accident. Gillespie could substantiate his own testimony if he could show that two days before the accident he was virtually recovered from the prior injury and that after the accident he had back problems. While Gillespie admitted that he suffered a prior back injury, which further evidence revealed was *initially* quite severe, he had not previously testified that two days prior to the accident he was in so much pain that to get into his truck he had to get on his knees and pull himself up. Moreover, Chrysler did not simply ask Gillespie what the extent of his pain and injuries were on March 7, or whether he had trouble getting into his truck on March 7. Rather, Chrysler specifically asked Gillespie whether *he told someone* on March 7 that he had to *get on his knees and pull himself* up to get into his truck. This was an exact reference to Gillespie's alleged statement to the nurse. Thus, Chrysler clearly intended to impeach Gillespie.

The cases cited by Chrysler are distinguishable. In *Domena v. Prince* (1977), 52 Ill. App. 3d 462, 469, 367 N.E.2d 717, 722, the appellate court, in a Structural Work Act suit, held that plaintiff had not impeached the witness so plaintiff did not have to submit proof of the prior impeaching statement. The witness testified that a plank in-

volved in the accident was 6 feet 11 inches in length. Plaintiff then read a previous statement the witness had given to an investigator wherein the witness had stated that he did not recall the length of the plank. The court found that the prior statement was not contrary to his testimony and therefore not impeaching, because the witness in the prior statement was referring to the dimensions of the plank before it was cut to 6 feet 11 inches. *Domena,* 52 Ill. App. 3d at 469, 367 N.E.2d at 722.

In *People v. Mullinax* (1979), 67 Ill. App. 3d 936, 939, 384 N.E.2d 1372, 1375, the appellate court held that the State did not attempt to impeach the witness. The State asked the witness whether the defendant "was going to take a shotgun and blow her away." The witness replied, "No, I think he said he was going to shoot her." (*Mullinax,* 67 Ill. App. 3d at 939, 384 N.E.2d at 1375.) The court noted that the State did not thereafter question the witness about a prior contrary statement, but merely accepted the witness' answer. The court also pointed out that the substance of both the question and the answer was virtually the same. (*Mullinax,* 67 Ill. App. 3d at 940, 384 N.E.2d at 1375.) In contrast, Chrysler explicitly asked Gillespie about a prior statement, and the substance of Gillespie's answer, that he did not recall making the statement, was not similar to the substance of Chrysler's question.

Chrysler contends that even if it had intended to impeach Gillespie, no impeachment occurred because Gillespie did not deny making the prior statement; Gillespie only acknowledged that he could not recall making the statement. We believe that this distinction is irrelevant. The weight of authority holds:

> "When a witness neither directly admits nor denies the prior inconsistent statement or act, it is competent to prove the affirmative by way of impeachment so long as it pertains to a material issue in the case. [Citations.] Were it not for this rule, 'the witness might, in every such case, exclude evidence of what he had said or done by answering that he did not remember.' *Ray v. Bell* (1860), 24 Ill. 444, 451.
>
> *** We enunciated [the] principle in *Crespo v. John Hancock Mutual Life Insurance Co.* (1976), 41 Ill. App. 3d 506, 520, 354 N.E.2d 381: 'Extrinsic evidence, either oral or documentary, need not be introduced if the witness unequivocally admits making the out-of-court statement, but if the witness denies or fails to recall making the prior statement, then it is incumbent upon the examining party to offer evidence of that statement. [Citations.]' " (*People v. Purrazzo* (1981), 95 Ill. App. 3d 886,

896-97, 420 N.E.2d 461, 469.)

Thus, Chrysler was required to submit proof of the prior statement by calling the nurse to testify.

Again, defendant's supporting cases, *People v. Kester* (1979), 78 Ill. App. 3d 902, 397 N.E.2d 888, and *Vancil v. Fletcher* (1967), 90 Ill. App. 2d 277, 232 N.E.2d 789, are dissimilar. In *Kester*, while the court held that a party need not lay a foundation for impeachment if the witness provides an equivocal answer (*Kester*, 78 Ill. App. 3d at 908, 397 N.E.2d at 892), the facts of that case are different. The State asked the witness twice if he had been discharged from his employment and the witness gave two different answers. The court held that "any negative implication [was] unrebutted by an equivocal answer, [so it was] not necessary to introduce substantiating evidence." (*Kester*, 78 Ill. App. 3d at 908, 397 N.E.2d at 892.) In the case at bar, Gillespie did not provide two different answers; he consistently stated that he did not recall making the statement.

Likewise, in *Vancil* the witness replied that he may have made the previous statement. The court held that because the answer was equivocal, the party did not have to offer the prior statement. (*Vancil*, 90 Ill. App. 2d at 284, 232 N.E.2d at 793.) Again, Gillespie's testimony was different because he said he *could not recall* making the statement or having the condition, not that he *may have* made the statement or had the condition.

"Once the foundation for impeachment by prior inconsistent statements has been laid, it is incumbent upon counsel, having laid such foundation to offer proof of the alleged impeaching statements." (*Schoolfield v. Witkowski* (1964), 54 Ill. App. 2d 111, 125, 203 N.E.2d 460, 466.) Counsel's failure to offer such proof, however, will not constitute reversible error, if the error was harmless and did not prejudice the trial. (*J.L. Simmons Co. v. Firestone Tire & Rubber Co.* (1985), 108 Ill. 2d 106, 115-16, 483 N.E.2d 273, 277.) Nevertheless, in the case at bar "[w]e agree with the trial judge's conclusion that, under the facts at bar, it was highly prejudicial for the defendant, having laid the foundation for impeachment of a key *** witness on a material issue ***, to fail to offer proof of the prior inconsistent statement[ ]." *Ramseyer*, 110 Ill. App. 2d at 98, 249 N.E.2d at 121; see *Schoolfield*, 54 Ill. App. 2d at 126, 203 N.E.2d at 466.

Chrysler argues that its references to the note during trial did not prejudice Gillespie because the note was merely cumulative of other properly admitted evidence. (See *Munjal v. Baird & Warner, Inc.* (1985), 138 Ill. App. 3d 172, 184, 485 N.E.2d 855, 865 (plaintiff's improper attempt at impeachment not reversible error where the sub-

stance of the witness' prior statement was substantiated by other evidence).) We do not find this to be true. As we noted earlier, when Chrysler asked Gillespie about the note, Gillespie responded that he did not recall making the statement. Chrysler also asked Jemsek about the note. The following is Jemsek's deposition as read to the jury:

"A. *** I did see him on the 7th of March. At that time he was checked in the office and he said he was fine as long as he was sitting or lying down, but when he tries to get up and move around he had a little trouble. And he had to flex his knees, he said, when he got into the truck. So he was limping around. ***

* * *

Q. Is that a verbatim quote from Mr. Gillespie [referring to the medical record in which the nurse's note also appears] or are you paraphrasing his condition?

A. Well, I put down my impression there by putting down, 'Limping around.'

* * *

Q. What, if any, significance did you attach to the history of the difficulty describing getting up into a truck?

A. No big deal. I just put him on medication. See, my impression was he was limping around and I didn't make any big deal about it. I put him on the anti-inflammatory [medication] and that is it.

* * *

Q. Doctor, with regard to the comment, 'He was practically crawling because of pain [on February 17, 1981],' taking that observation in conjunction with the nurse's note that he had to pull himself up into the truck, did you make any connection between the two in terms of how he was responding to treatment or care during this time from the 17th [of February] up to the 7th of March?

A. We just treated him. He got well."

This testimony reveals that Jemsek did not substantiate the factual information in the nurse's note. Contrary to Chrysler's assertions, we believe Jemsek's statement that Gillespie "had to flex his knees *** when he got into the truck" was substantially different from the nurse's statement that when Gillespie "gets up in truck he has to get up on knees and pull himself up"; the former condition is much less restrictive than the latter condition. Jemsek did testify extensively that Gillespie's prior injury was initially quite severe, but Jemsek also

felt that Gillespie had improved enough to allow him to return to work in March. As we noted earlier, the crucial evidence concerned Gillespie's condition *just before* the accident; his condition three weeks before the accident was not as important. Therefore, the note was not merely cumulative of Jemsek's testimony.

Chrysler asked a third witness, Lack, about the note. During the deposition of Lack, Chrysler asked:

"Q. Did [Gillespie] indicate to you that on March 7, 1981, approximately two days before he allegedly sustained an injury in this case, that he had reported to Dr. Jemsek's office and gave the nurse the history that as long as he was sitting or lying he was okay, but when he tries to get up and move around he has a lot of trouble; when he gets up on the truck he has to get up on his knees and pull himself up, and Dr. Jemsek related he was limping? Did he relate that to you?

A. No, I don't have a recollection or a documentation of that history."

Thus, Lack also did not verify that Gillespie's condition was as bad as indicated in the nurse's note. Consequently, the note was not cumulative of other evidence presented at trial because neither Gillespie, nor Jemsek, nor Lack testified to the same facts stated in the nurse's note.

Chrysler also contends that its error was not prejudicial because other evidence supported the jury's verdict. Chrysler notes that although Gillespie testified that two co-employees helped lift the hood off of his back, six of the seven employees on duty on the night of the accident testified that they did not help Gillespie. Moreover, another mechanic, David Spangler, testified that when he repaired the van, he found that the hinge had been disconnected, not broken. Chrysler also asserts that preventative maintenance inspections of the van revealed that no hinge replacement occurred until seven months after the accident, even though the March and April inspection reports were filled out by Gillespie. In addition, Gillespie was hospitalized for five days after the first injury, but did not stay overnight at the hospital after the accident. Gillespie also missed two weeks of work after the first injury while he only missed one week of work after the accident. Chrysler concludes from this evidence that the jury could have believed that the accident did not occur and thus found in favor of Chrysler.

The pieces of evidence Chrysler points to, however, do not diminish the importance of or prejudicial effect of the nurse's note. The evidence at trial clearly conflicted; Gillespie also presented other evi-

dence to support his case. Chrysler's other evidence, however, did not remedy the prejudice Chrysler created by attempting to impeach a key witness on a material issue without offering proof of the prior statement. (*Ramseyer*, 110 Ill. App. 2d at 98, 249 N.E.2d at 121.) The medical evidence on Gillespie's prior back injury was crucial to the issue of proximate cause. As we said earlier, if, as Chrysler asserts, Gillespie had severe back problems only two days before the accident, then it was less likely that an intervening accident occurred to cause the back problems Gillespie suffered after the accident. Although Gillespie admitted that his prior injury occurred only a month before the accident and was severe enough that he had to be hospitalized for five days, the essential issue was the extent to which Gillespie had recovered from the injury just prior to the accident. That is why the nurse's note was so important to Chrysler. The note made Gillespie appear as though he was in so much pain that he had great difficulty getting into his truck. This is precisely what Chrysler argued to the jury during closing argument.

> "Then on March 7, two days before the accident, [Gillespie] goes in ***. But his pain was so bad that he went to see Dr. Jemsek on that date and he reports, he says I'm fine if I'm sitting or lying. I have to get on my knees to get into the truck and pull myself into the truck."

Chrysler similarly referred to the note during its opening statement. Thus, contrary to Gillespie's testimony that an accident took place, Chrysler tried to prove that no accident occurred by showing that Gillespie's back problems were a result of the first injury, not the alleged intervening accident.

■■ Chrysler asserts that it only mentioned the note five times during a three-week trial. During part of the trial, however, the parties presented evidence on the issue of the defectiveness of the hinge; only at the end of the trial did the court direct a verdict on this issue. As we have pointed out, the note affected a crucial factor—Gillespie's credibility—on the issue of proximate cause, the only issue before the jury. The importance of the nurse's note to Chrysler is evidenced by Chrysler's questions to the key witnesses—Gillespie, Jemsek, and Lack—about the note, and by Chrysler's references to the note in both its closing argument and opening statement. We additionally point out that "no statement may be made in opening which counsel does not intend to prove or cannot prove." (*Gillson v. Gulf Mobile & Ohio R.R. Co.* (1969), 42 Ill. 2d 193, 197, 246 N.E.2d 269, 272.) For these reasons, we cannot agree with Chrysler that it only made "passing references" to the note, or that its references to the note consti-

tuted "minor" or "harmless" error.

Chrysler cites *J.L. Simmons* (108 Ill. 2d 106, 483 N.E.2d 273) for support. The court in that case held that the admission of hearsay statements used to cross-examine a witness was harmless error. (*J.L. Simmons*, 108 Ill. 2d at 115-16, 483 N.E.2d at 277.) In *J.L. Simmons*, however, the court stated that the error was minor and "did not go to the heart of the [case]" (*J.L. Simmons*, 108 Ill. 2d at 116, 483 N.E.2d at 277), unlike our finding in the case at bar. For similar reasons, we find *Reidelberger v. Highland Body Shop, Inc.* (1981), 83 Ill. 2d 545, 416 N.E.2d 268, and *Bradley v. Caterpillar Tractor Co.* (1979), 75 Ill. App. 3d 890, 394 N.E.2d 825, distinguishable. Finally, while the court in *People v. Williams* (1969), 105 Ill. App. 2d 25, 34-35, 245 N.E.2d 17, 21, held that failure to offer proof of alleged impeaching statements is not reversible error where there is additional evidence in the record and where the questions and answers are of minimal importance, our review of the case reveals that it is factually distinguishable from the case at bar. Moreover, the references to the note were not of minimal importance. We believe that the references to the nurse's note affected the outcome of the trial (*J.L. Simmons*, 108 Ill. 2d at 115, 483 N.E.2d at 277), and therefore we agree with the trial court that Chrysler's error necessitated a new trial.

■ Chrysler additionally contends that the trial court's analysis of the prejudice issue revealed that the court misunderstood the case. The trial court stated in its order:

"The only witness who testified to the occurrence was the plaintiff and his testimony was crucial on the issue of liability. Therefore, any attack on the credibility of the plaintiff in terms of whether it had a prejudicial effect on the trial becomes magnified."

Chrysler first points out that Gillespie was not the only occurrence witness. Chrysler presented testimony from six of the employees on duty the night of the accident. Chrysler then argues that the trial court incorrectly stated that even an insignificant challenge to Gillespie's credibility would be prejudicial. Chrysler asserts that this reasoning would allow a court to set aside a verdict even when the verdict is supported by the manifest weight of the evidence. Chrysler correctly points out that a court may not set aside a verdict where the error is minor and where there is other competent evidence to support the verdict. *Bradfield v. Illinois Central Gulf R.R. Co.* (1985), 137 Ill. App. 3d 19, 23, 484 N.E.2d 365, 368, *aff'd* (1987), 115 Ill. 2d 471, 505 N.E.2d 331.

■ We do not agree, however, with Chrysler's interpretation of

the trial court's order. First, the trial court merely stated that Gillespie was the only *eyewitness* to the accident. None of the six witnesses Chrysler presented testified that the accident occurred; rather, they testified that the accident did *not* occur. The court did not say that Gillespie was the only occurrence witness. Second, the trial court only stated that the impeachment error was not minor, and the reason it was not minor was that a crucial issue in the case was Gillespie's credibility which the attempted impeachment directly addressed. Thus, the trial court did not misstate the facts or misapply the law.

For these reasons, the trial court did not abuse its discretion in granting Gillespie's motion for a new trial, and thus we affirm the order of the trial court of St. Clair County.

Affirmed.

HARRISON, P.J., concurs.

JUSTICE WELCH, dissenting:

I disagree with the majority because I do not believe that Chrysler's improper impeachment, even when taken together with Chrysler's references to the nurse's note during opening statement and closing argument, prejudiced plaintiff so as to deprive him of a fair trial. I find no prejudice in Chrysler's references to the nurse's note because I do not believe the improper impeachment destroyed or seriously damaged plaintiff's credibility before the jury; the jury was already properly aware of plaintiff's prior, serious back problems; and the references to the nurse's note were relatively brief and insignificant in the context of the entire trial.

The trial court held that the incomplete impeachment of plaintiff was an attack on plaintiff's credibility, the prejudicial effect of which was magnified because plaintiff was the only eyewitness to the accident, and therefore his testimony was crucial on the issue of liability. However, I do not think that Chrysler's attempted impeachment of plaintiff by use of his alleged prior statement to a nurse was any more damaging to plaintiff's credibility than Chrysler's questions to plaintiff regarding prior statements he had made to Dr. Jemsek relating to his prior back problems. For example, plaintiff was asked the following questions and gave the following answers:

"Q. Do you recall going to Dr. Jemsek's office on March 7th, just a couple days before the hood incident?

A. No. I don't remember.

Q. Okay. Do you recall complaining that on March 7th that

you were fine as long as you were sitting or lying down, but when you tried to get up and move around, you had a little trouble?

A. No. I don't remember that.

Q. Did you ever remember telling anyone that you had to flex your knees when you got into the truck?

A. No.

Q. Do you recall if you were limping on that date?

A. Not that I remember, no."

I see little difference between the impeaching effect of these questions and answers relating to statements plaintiff made to Dr. Jemsek and the complained-of question relating to his statement to the nurse, "And do you remember telling anybody on March 7th that when you get up in the truck that you have to get up on your knees and pull yourself up?" to which plaintiff responded, "Not that I recall." Considering this single question in light of a great deal of other evidence which damaged plaintiff's credibility, I cannot conclude that any additional impeaching effect of this one question would have been enough to have deprived plaintiff of a fair trial.

Furthermore, contrary to the majority, I believe that plaintiff's prior statement to the nurse was substantiated by other evidence, *i.e.* plaintiff's statement to Dr. Jemsek that he had to flex his knees when getting into his truck. While the majority finds that the two statements were substantially different, I disagree. I think the two statements are substantially similar and indicate substantially the same amount of disability.

Nor do I think that the substance of the alleged prior statement to the nurse, that plaintiff had to get up on his knees and pull himself into his truck, had such a prejudicial effect as to deny plaintiff a fair trial. Although the question asked of plaintiff had no substantive value in itself, Chrysler did refer to the nurse's note in both its opening statement and closing argument. On both occasions, Chrysler's attorney discussed plaintiff's prior back problems and stated that plaintiff had told Dr. Jemsek that he had to get on his knees and pull himself into his truck. While this is not a correct statement of the evidence, plaintiff did tell Dr. Jemsek that he had to flex his knees to get into his truck. As I pointed out above, I do not think the two statements are so substantially different that the improper references to the nurse's note deprived plaintiff of a fair trial.

Furthermore, the jury was well informed by other, competent evidence that plaintiff had prior, serious back problems, including an injury to his lower back which required plaintiff to be hospitalized for

five days only three weeks before his alleged accident. Dr. Jemsek, plaintiff's treating physician, testified that plaintiff presented himself on February 16, 1981, with severe pain in the lower back and upper thighs. Plaintiff had to crawl instead of walk and could hardly get up and down. Dr. Jemsek diagnosed plaintiff as having acute low back strain and plaintiff was hospitalized and treated.

Although plaintiff seemed to recover from his acute low back strain and was released from the hospital, he returned to Dr. Jemsek on March 7, 1981, only one day before the alleged accident, complaining that he was fine as long as he was sitting or lying down, but that he had trouble when he tried to get up and move around. Plaintiff had to flex his knees when he got into his truck and was limping. Plaintiff was put on Meclomen, a nonsteroid anti-inflammatory drug, and continued on Flexeril, a muscle relaxant.

I think the references to the nurse's note added little to this other properly admitted evidence of plaintiff's prior back problems. Only two days before plaintiff's alleged accident, on the same date as the nurse's note was recorded, plaintiff told Dr. Jemsek that he had to flex his knees to get into his truck. This statement was made in the same visit as was the statement to the nurse, was properly admitted, and is substantially identical to the statement made to the nurse. The improper references to the nurse's note were not sufficiently prejudicial as to deprive plaintiff of a fair trial.

Finally, the references to the nurse's note were relatively brief and insignificant in the context of this entire lengthy proceeding. They were not emphasized to the jury by objections or otherwise. Instead, they came in the midst of other similar references and in all likelihood held little significance for the jury. I do not believe that these brief references to the nurse's note changed the result reached by the jury, especially in light of the other evidence impeaching plaintiff's credibility and of the substantially similar evidence of plaintiff's prior back problems.

As the majority points out, a trial court's order granting a new trial should not be disturbed by a reviewing court absent a clear abuse of discretion on the part of the trial judge. (*Ramseyer v. Illinois Central R.R. Co.* (1969), 110 Ill. App. 2d 95, 96, 249 N.E.2d 120, 120.) However, when the evidence supports the jury's verdict and there is no showing that a party was denied a fair trial, it is an abuse of discretion for the trial court to substitute its judgment for that of the jury. *Reidelberger v. Highland Body Shop, Inc.* (1981), 83 Ill. 2d 545, 549, 416 N.E.2d 268, 270.

Here, both plaintiff and the trial court agreed that the jury's ver-

dict was not against the manifest weight of the evidence. Because I do not believe that Chrysler's references to the nurse's note prejudiced plaintiff so as to deprive him of a fair trial, I would reverse the order of the trial court granting plaintiff a new trial.